## BEAUDRY *v.* WATKINS.

MASTER AND SERVANT—WORKMEN'S COMPENSATION—DEATH—ACCI-
DENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT—WILFUL
INJURY.

> Claimant's son was employed by a laundry as a delivery
> or errand boy, and, on returning from lunch at home,
> at noon, on his bicycle, caught on a motor truck and by
> reason of a sudden turn was thrown and run over by a
> following vehicle. He had received permission from one
> of his employers to go home to his lunch on this occasion,
> getting a package on the way and returning with it after-
> wards. *Held*, that the accident arose out of and in the
> course of his employment and that the injury did not
> result from the wilful or intentional misconduct of the
> servant. OSTRANDER, BROOKE, and STEERE, JJ., dissenting.[1]

Certiorari to Industrial Accident Board. Submitted
April 19, 1916. (Docket No. 41.) Decided June 1,
1916.

Charles E. Beaudry presented his claim for com-
pensation for the death of Gordon Beaudry while in
the employ of William H. Watkins and Byron D. Rad-
cliff, copartners. From an order awarding compensa-
tion, defendants bring certiorari. Affirmed.

*Ivin E. Kerr*, for appellants.

*McHugh, Gallagher, O'Neil & McGann.* for appellee.

MOORE, J. The facts are not complicated. On April
29, 1914, and prior thereto, Gordon Beaudry, nearly
15 years of age, was employed by Watkins & Radcliffe
as a delivery boy, and he was furnished a bicycle with
which to do his work. On that date he was to make

---

[1]Authorities on the question of workmen's compensation acts,
generally, are discussed in a comprehensive note in L. R. A.
1916A, 23 *et seq.*

a delivery on Cass avenue. Permission was given him to get his luncheon at home, No. 997 Theodore street, and he was then to call for a package and return to the store. One of his employers testified he—

"asked my permission to go home to lunch from Theodore street, or whatever the call back might be. I reluctantly gave him permission to make that trip that way on the ground that he would hurry up and come back. I think it was about 20 minutes to 11 when I gave him this order, and he argued that he could go to Cass avenue first; that he could go and make the pick-up and get his lunch and get back early.

"Q. Making this pick-up and making this delivery were in the course of his employment?

"A. Oh, yes.

"Q. He was employed to do this very thing, Mr. Watkins?

"A. He was."

The boy called at his home at about 11:30 o'clock, and took 10 minutes for lunch. He told his mother he had another delivery to make and was in a hurry. As he was proceeding in a westerly direction on Canfield Avenue East, he caught on the right rear end of a motor truck, proceeding in the same direction. This truck overtook and passed another truck, also proceeding in a westerly direction. The boy was still hanging on the right rear end of the truck, which turned suddenly to the right. As a result of the truck making this sudden turn, the boy was thrown to the pavement a few feet in advance of the rear truck, and, before the driver in charge could stop, the left front wheel passed over the boy's body. Death resulted soon. Deceased at the time of his death was earning $6 a week, which he gave to his mother each week for use in the family. Deceased was an expert bicyclist.

We quote from the brief:

"It is the claim of respondent: (1) Gordon Beaudry, deceased, did not receive a personal injury arising out

of and in the course of his employment. (2) He was injured by reason of his intentional and wilful misconduct."

Sections 1, 2, pt. 2, Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, §§ 5431, 5432), are quoted. Under the first grouping it is argued—we again quote:

"After it is shown that the accident happened within the time during which he is employed, and at the place where he may reasonably be during that time, that is, within the period and the scope of the employment, the workman must also know [show] that it was a risk incident to the employment; that it arose because of something he was doing in the course of his employment, or because he was exposed by reason of the peculiar nature of his employment to the particular hazard which caused the injury"

—and that as the accident happened in the instant case because of decedent taking hold of the truck, there could be no liability. Counsel cite many authorities which it is claimed support his contention. Under the second heading it is argued:

"If the court should hold that in order to constitute intentional and wilful misconduct, it should appear that the workman intended or expected to injure himself, it would be interpolating into the statute a limitation upon the clause which cannot be gathered from a plain and obvious meaning of the word."

The authorities cited are chiefly those of foreign jurisdictions. This court had occasion to consider the language used in sections 1 and 2, pt. 2, of the act (2 Comp. Laws 1915, §§ 5431, 5432) in *Clem* v. *Motor Co.*, 178 Mich. 340 (144 N. W. 848, L. R. A. 1916A, 352), and in *Rayner* v. *Furniture Co.*, 180 Mich. 168 (146 N. W. 665, L. R. A. 1916A, 22; Am. & Eng. Ann. Cas. 1916A, 386). A construction of section 2 was involved in *Gignac* v. *Studebaker Corporation*, 186 Mich. 574 (152 N. W. 1037). While the instant case is not on all fours with any one of those cases, we

think it must be said that the reasoning used in deciding them justified the ruling of the Industrial Accident Board.

The judgment is affirmed, with costs.

STONE, C. J., and KUHN and PERSON, JJ., concurred with MOORE, J.

OSTRANDER, J. In my opinion, the risk assumed by the boy, though the cause of the injury, was not a risk incident to his employment.

STEERE and BROOKE, JJ., concurred with OSTRANDER, J.

BIRD, J., did not sit.