PORRITT *v.* DETROIT UNITED RAILWAY.

Master and Servant—Workmen's Compensation Act—Course of Employment.

The death of a railroad fence repairer arises as the result of an accident in the course of his employment, where it is his duty to report at a substation for instructions as to place to work at a certain time each morning, and he receives pay beginning at such time, but, owing to rain, does not report at such time one morning, and is requested by the foreman to proceed to the place of work, to which he assents, but declines a ticket proffered by the foreman, stating that he prefers to walk, and, pursuant to custom among employees, when not riding, starts down the right of way and is struck and killed by one of the employer's cars.[1]

Certiorari to Industrial Accident Board. Submitted October 22, 1917. (Docket No. 84.) Decided December 27, 1917.

Ethel Porritt presented her claim for compensation against the Detroit United Railway for the accidental

---

[1] On construction and effect of workmen's compensation acts, generally, see note in L. R. A. 1916A, 23, L. R. A. 1917D, 80.

death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Corliss, Leete & Moody* and *Benjamin S. Pagel,* for appellant.

*Pelton & McGee,* for appellee.

The facts necessary to understand the issue involved are thus concisely stated in the findings of the board on hearing on review:

"The applicant in this case claims compensation for the death of her husband, Joseph Alfred Porritt, an employee of the Detroit United Railway, killed by a car of that railway on the 29th day of November, 1916.

"For three weeks prior to the accident, deceased had been employed as a fence builder along the line of respondent. The foreman of the gang either called at his house or he reported to the substation, which was adjacent to his home in the village of Oxford, every morning, and he received directions from said foreman. The respondent carried the employees, including the deceased, to the work on the local passenger car, and brought them back to the substation on the local passenger car. They were paid from the time they left the substation until the time they returned to it, with an hour out for lunch. The service on this line was a two-hour service, and, when a car was not available, they walked along the direct route to their work, which was along the railway tracks. This was done by the foreman as well as the employees. There was no other way to reach the place in question except by a circuitous route around upon the public highway. It was considerably farther that way. On the morning in question, it was raining, and the decedent did not intend to go to work. The foreman called at his house very shortly before the hour for leaving and said he was going to work, and told the decedent to come to work as soon as he could, and that they would work that day. The foreman offered the decedent a ticket to ride, which was re-

fused on the ground that the employee could get there quicker by walking, to which the foreman assented. The deceased employee apparently started down the right of way, which was the usual route in the absence of taking a car, and in so doing was struck and killed by one of respondent's cars. The place where they were working was known as Groover's Stop, or Rosedale. It was about a mile from the substation. The decedent was about 80 rods from the place where he was to work at the time he was struck."

KUHN, C. J. (*after stating the facts*). It is the defendant's contention that the accident did not arise out of and in the course of deceased's employment, as he had chosen the route to his employment of his own free will and had not even reached the vicinity of his work when the accident happened. The real question seems to be as to whether or not, under the peculiar facts of this case, the relationship of master and servant existed between the claimant's decedent and the defendant at the time of the accident. In our opinion a critical analysis of this testimony shows that the relationship had been created. The nature of the employment, that of a fence repair man, precluded any fixed place of employment, and the distance 'to the place of actual work depended, of course, upon the location of the particular fence along the right of way where the repairs were needed, and the testimony of the defendant's foreman is that the decedent's pay began at the substation, where the decedent was supposed to report for instructions, and that he drew his pay until his return to the substation, with an hour out for lunch. It was the primary duty of the decedent to report to the substation for his directions for the day, and as he had not appeared on the morning of the accident because of the unfavorable weather conditions, the foreman called at his house, as he had previously done, and there gave him directions for the day. The purpose of the foreman in going to the

house was, as he said, to get him to the work, because they needed him. To have waited for the electric car furnished by the company would have necessitated a delay of an hour to an hour and a half, and, in response to the order to report for duty, the decedent said that he would not wait for the car, but would walk, to which suggestion the foreman said he acquiesced.

The case of *City of Milwaukee* v. *Althoff*, 156 Wis. 68 (145 N. W. 238, L. R. A. 1916A, 327), is similar in many respects. In that case the decedent was to report to his foreman at 7:30 o'clock each morning to receive instructions as to his work. He did so report, and, after receiving instructions as to where he was to work, proceeded towards the place, and while on his way injured himself, from which injuries he subsequently died. The court in that case said:

"In the instant case, when the servant reported to his foreman and received his instructions for the day and proceeded to carry out these instructions by starting for the place where he was to work, we think the relation of master and servant commenced, and that in walking to the place of work the servant was performing a service growing out of and incidental to his employment."

We think that an examination of the cases of *Hills* v. *Blair*, 182 Mich. 20 (148 N. W. 243), and *Guastelo* v. *Railroad Co.*, 194 Mich. 382 (160 N. W. 484, L. R. A. 1917D, 69), will show that they are readily distinguishable from the facts now before us. In neither of these cases does it appear that the employee at the time of the accident was acting under direct orders of the employer, and that it was necessary for the employee to report at a certain place apart from the scene of his work before directions as to his day's work could be had. See *Beaudry* v. *Watkins*, 191 Mich. 445 (158 N. W. 16, L. R. A. 1916F, 576) ; *Kunze*

v. *Detroit Shade Tree Co.,* 192 Mich. 435 (158 N. W. 851, L. R. A. 1917A, 252).

We are of the opinion that it conclusively appears that, at the time the applicant's decedent met his death, he was on duty in the line of his employment, acting under the direction of his employer, and therefore that the relationship of master and servant had commenced. We conclude therefore that the accident did arise out of and in the course of the decedent's employment, and that the board acted properly in so holding. The award is accordingly affirmed, with costs.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.