KROON *v.* KALAMAZOO COUNTY ROAD COMMISSION.

1. EVIDENCE—INFERENCES.
   Legitimate inferences may be drawn from established facts.

2. WORKMEN'S COMPENSATION—CONJECTURE.
   An award of workmen's compensation may not be based on spec-ulation and conjecture as to what might have happened.

3. SAME—INFERENCES—CONJECTURE.
   An applicant for workmen's compensation must fail if there are 2 or more inferences equally consistent with the facts, arising out of the established facts, if the award must be based upon one which can only be arrived at by conjecture or speculation.

4. SAME — BURDEN OF PROOF — DEATH — PROXIMATE CAUSE — DE-PENDENCY.
   A mother, as plaintiff in a proceeding to recover workmen's compensation, has the burden of showing that the death of her son arose out of his employment and that she is entitled to compensation as a dependent.

5. SAME—PURPOSE OF ACT.
   Workmen's compensation, as provided by the workmen's com-pensation act, is not intended to be either sickness, health, or life insurance or to provide benefits for employees suffering from ordinary diseases of life.

---

* Continued from Volume 338.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 20 Am Jur, Evidence § 159; 58 Am Jur, Workmen's Compen-sation § 433.
[3, 4] 58 Am Jur, Workmen's Compensation §§ 437, 441, 450.
[5] 58 Am Jur, Workmen's Compensation § 2.
[6] 58 Am Jur, Workmen's Compensation § 260.
   Workmen's compensation: injury or death due to elements. 13 ALR 977; 40 ALR 401; 46 ALR 1218; 53 ALR 1084; 83 ALR 235.
[7] 58 Am Jur, Workmen's Compensation § 210.

6. SAME—LIGHTNING—PROXIMATE CAUSE.

> The proximate cause of death of plaintiff's decedent, defendant road commission's employee who was carrying a shovel with the point about a foot above his head when the shovel was struck by lightning and the bolt conducted down the handle where it entered the body of the deceased, may not be said to be the fact that he was carrying a shovel, even the expert testimony not removing the matter from the realm of conjecture as to whether he would have been struck by lightning irrespective of the fact that he was carrying a shovel while at work.

7. SAME—IN COURSE OF EMPLOYMENT—PROXIMATE CAUSE.

> An employee may suffer an accident while engaged at his work or in the course of his employment which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it, hence no workmen's compensation may be awarded for such an injury.

Appeal from Workmen's Compensation Commission. Submitted January 5, 1954. (Docket No. 2, Calendar No. 45,897.) Decided February 18, 1954.

Pearl Kroon presented her claim for compensation against Kalamazoo County Road Commission, employer, and Michigan Mutual Liability Company, insurer, for death of her son, Joseph Kroon, when struck by lightning. Award to plaintiff. Defendants appeal. Reversed and remanded.

*Fox, Fox & Thompson,* for plaintiff.

*L. J. Carey* and *George J. Cooper* (*Bruce W. Griffin,* of counsel), for defendants.

CARR, J. On the 27th of June, 1951, Joseph Kroon, the son of the plaintiff herein, was working for the defendant Road Commission at a gravel pit in Kalamazoo county. Several pieces of equipment used in connection with the work were located in proximity

to the pit.   Such equipment included a crane with a 40-foot boom raised approximately 30 feet in the air and a screening machine 13 feet in height.   About 2:30 p.m. it began to rain, and Kroon started towards the screening machine for shelter.   He was at the time carrying over his left shoulder a wooden handled shovel with a metal scoop, the scoop extending approximately one foot above his head.   Before he had reached the screening machine and when he was approximately 300 feet distant from it he was struck and killed by a bolt of lightning.   The record indicates that such bolt was the only one in the vicinity during the afternoon.   Apparently the lightning struck the point of the shovel, melting it, burned a place on the handle, and thence entered the body of the deceased.

Plaintiff instituted the present proceeding, claiming partial dependency and that the death of her son resulted from a compensable injury arising out of and in the course of the employment.   The deputy of the workmen's compensation commission before whom the proofs were taken found in plaintiff's favor.   The award made, modified only as to the date of the injury, was affirmed by a majority of the commission, one member dissenting.   Defendants, on leave granted, have appealed, claiming that there was no evidence before the workmen's compensation commission to support its finding.

On the hearing before the deputy, plaintiff offered the testimony of Dr. Paul Rood, chairman of the department of physics at Western Michigan College, who testified that he had studied electricity, including lightning, as a branch of physics, reading authoritative works on the subject.   His testimony was received on the theory that he had been properly qualified as an expert.   In answer to a hypothetical question he stated in substance that in his opinion the likelihood of Kroon being struck by a lightning

bolt was increased because of the fact that he was carrying the shovel over his shoulder and that it projected above his head. The following excerpt from his testimony indicates its general nature:

"*Q.* We have no idea of the area where a bolt of lightning is going to strike?

"*A.* Yes, I should say we do. I will put it this way: If we knew where the charge and the crack was in the cloud just moving by, if we knew where the charge was we would have a very good idea where the lightning might strike.

"*Q.* Well, over how large an area?

"*A.* We can't say because we can't measure where that charge is. It may be over quite a large area. It may be over a limited area.

"*Q.* Let's say a large area; how large would that be?

"*A.* I wouldn't be able to say.

"*Q.* Would you say over an area of a mile in circumference?

"*A.* It could be, I suppose. I would guess that it was not of that size. I would say smaller than that.

"*Q.* Would you say a half mile in circumference?

"*A.* Again I don't like to say definitely. I would say it could be over an area as small as a few feet in diameter, the charge concentration, or it could be over an area perhaps a half mile long. It depends entirely—

"*Q.* Then if it were in an area let's say a half mile in diameter, it would be more likely that lightning would strike an object that was the highest in that immediate vicinity?

"*A.* That is true. * * *

"*Q.* In your studies, Doctor, the phenomena of lightning, have you run across very many cases where a man has been struck by lightning on level ground?

"*A.* Not in my own experience, but I have heard from other sources that this has happened. I'll take that back. I wouldn't say definitely when a man was

walking along on level ground, I don't know of a particular case, but I have heard of many cases of men being struck by lightning. Not specifying under what conditions, because I don't have the facts on that. * * *

"*A.* One thing I think we could say, we do know, and this also I believe is accepted by the man that studies lightning, is that if the man carrying the shovel 7 feet high is struck, he would receive the bolt of lightning which might have hit the ground in that area at any place over a circle of a diameter of 28 feet. They usually use a 4 to 1 ratio. That is, the man was in the center of a circle 28 feet in diameter, if anywhere in that circle a point on the ground would be struck without the man there, when the man is there he gets it, no matter where he is in that circle.

"*Q.* No matter whether he is carrying a shovel?

"*A.* I am assuming a man with a shovel 7 feet high, and 28 feet would be sort of a protected area, and 28 feet in diameter around this man he would get the charge of the bolt of lightning that might strike in this area.

"*Q.* Without the shovel?

"*A.* Four to one. It is 24.

"*Q.* Twenty-four if he didn't have the shovel, and also within this area the chances are he would be struck by lightning, if it was within an area of 24 feet?

"*A.* Yes.

"*Q.* Because he does have the shovel and puts the point up 1 foot higher, then we have an area of 28 feet?

"*A.* The chances are as 28 squared to 24 squared. It varies with the square. I figure it is about a 40% greater chance of being struck, this man, because he carried the shovel 1 foot higher than his head.

"*Q.* If lightning is in that area?

"*A.* Yes, sir.

"*Q.* But if lightning is in that 24-foot area, whether he has a shovel or not, he hasn't got a chance, has he?

"*A.* If we could assume that the charge is in that area of 24 feet and lightning was going to strike there, it would strike him, let's put it that way.

"*Q.* We do know then that within a 24-foot area if a man is standing there he is going to get struck by lightning?

"*A.* No.

"*Q.* We don't know that?

"*A.* No.

"*Q.* By the same token—

"*A.* If lightning was going to strike there. We can't tell. If it was going to strike there anywhere in the 24 foot, if he had no shovel, he would be the one that would be struck, that is the chance.

"*Q.* And with the shovel in a 28-foot area?

"*A.* Yes, sir; but I think that is misleading, just to leave it 28 and 24, because the chances don't depend on 28 to 24; it depends on 28 squared to 24 squared."

The award of the compensation commission was based on the testimony of Dr. Rood which, as the excerpts above quoted indicate, was somewhat theoretical in nature rather than factual. Assuming, however, that Kroon would have been struck by lightning had the charge or bolt been within the area of a circle having a radius of 12 feet, Kroon being at the center, without reference to the shovel, and that the presence of the tool over his shoulder increased the area of danger to a circle having a radius of 14 feet, may it be said with any degree of certainty that there was in fact a causal connection between the shovel which he had been using in his work and his death? While legitimate inferences may be drawn from established facts, an award may not be based on speculation and conjecture as to what might have happened. In *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich 130, 137, it was said:

"But the inferences drawn must be from established facts; inference may not be built upon infer-

ence, possibilities upon possibilities, or inferences drawn contrary to the established facts, contrary to the undisputed evidence. If an inference favorable to the applicant can only be arrived at by conjecture or speculation the applicant may not recover. So if there are 2 or more inferences equally consistent with the facts, arising out of the established facts, the applicant must fail."

It must also be borne in mind that the burden of proof is on the plaintiff to show that the death of her son arose out of his employment, and that she is entitled to compensation as a dependent. This and other basic principles were recognized and expressly declared in *Riley* v. *Kohlenberg,* 316 Mich 144, 148, 149, as follows:

"Since by recent amendments to the workmen's compensation act injuries and deaths resulting from occupational diseases have been made compensable, many borderline cases, of which the instant case is typical, have been presented. In deciding such controversies it seems imperative that 3 principles be kept in mind. (1) The burden of proving a right to compensation is on the party asserting that right. *Pucilowski* v. *Packard Motor Car Co.,* 278 Mich 240; *Veek* v. *Wesley Freight Co.,* 306 Mich 485. (2) In awarding compensation to a plaintiff, the department may not indulge in the assumption of a mere possibility in the nature of a guess as to whether plaintiff is entitled to compensation. *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich 130, 137; *Marman* v. *Detroit Edison Co.,* 268 Mich 166. (3) Workmen's compensation provided by the act is not intended to be either sickness, health, or life insurance or to provide benefits for employees suffering from ordinary diseases of life."

See, also, *Nightlinger* v. *Giant Super Market, Inc.,* 334 Mich 90.

Whether death by lightning may be regarded as a personal injury arising out of and in the course of

employment was considered by this Court in *Klawinski* v. *Lake Shore & Michigan Southern Railway Co.*, 185 Mich 643 (LRA1916A, 342). There the widow of an employee of defendant applied for dependency compensation because of the death of her husband by lightning. During a rainstorm Klawinski and other employees, members of a section gang on defendant's railroad, sought shelter in a barn. While therein Klawinski was killed by a bolt of lightning. It was in evidence that the employees had gone to the barn at the direction of their foreman or the assistant foreman. It was held that claimant's husband did not come to his death as the result of a personal injury arising out of and in the course of his employment within the meaning of the workmen's compensation act, the Court directing attention to the fact that the legislative intent was to allow compensation for injuries sustained by employees because of "industrial accidents."

*Thier* v. *Widdifield*, 210 Mich 355, involved a factual situation more analogous to that in the instant proceeding than did the *Klawinski Case*. The defendant employer, Widdifield, was engaged at Charlevoix, Michigan, in the ice, coal and wood business. In connection therewith he maintained a barn located approximately 75 feet from his dwelling house and connected therewith by an insulated electric light wire which entered the barn about 6–1/2 feet above the ground. Thier was employed to deliver ice to customers. On the date of his injury Thier and his employer noticed that a storm was coming and in consequence they put in the barn the team of horses with which they had been working. Thier was standing in the doorway, within a few inches of the point where the electric light wire entered the barn, when he was struck by a bolt of lightning and killed. During the storm the dwelling house was also struck by lightning, but the barn was not.

Thier's widow brought proceedings for compensation on the theory that his death resulted from injuries arising out of his employment. An award of compensation was made by the industrial accident board, the predecessor of the present workmen's compensation commission, on the ground that the wire referred to was an agency of man and that it had combined with the elements to produce the injury to the employee. This Court came to the conclusion that the award could not be sustained, saying in part (p 359):

"A careful reading of the testimony contained in this record leads us to differ from the conclusion reached by the board. We are unable to find any evidence to warrant the finding 'that the lightning which struck the house, damaging the electric lights, followed the electric wire to the barn and struck and killed the deceased.' Nor do we find any evidence to warrant the finding that the position of deceased was 'more hazardous than that of others in the same community; that the deceased by reason of his employment was thereby exposed to injuries from lightning, other than the community in general in that locality, and in consequence thereof met his death.' With due deference to the opinion of the board, we think the findings above referred to were based upon mere conjecture and speculation."

In the more recent decision of *Nelson* v. *Country Club of Detroit,* 329 Mich 479, plaintiff was employed by defendant as a caddy on its golf course. While so engaged a storm arose and plaintiff, with others, sought shelter under a nearby tree. Lightning struck the tree and plaintiff was injured. The deputy commissioner before whom the case was heard denied compensation on the ground that such injuries resulted from an act of God and did not arise out of the employment. The commission came to a different conclusion and awarded compensation. Defend-

ants appealed, claiming that the testimony in the case did not support the award. On the hearing before the deputy, plaintiff offered as a witness an electrical engineer, an expert, who testified in substance that a person in a wide open space is subject to greater danger from lightning than one in or near a building or in small open spaces. On the basis of such testimony it was urged that plaintiff was subjected to a greater risk of being injured by lightning because of his employment on the golf course than were others in the community generally. In setting aside the award and holding that plaintiff was not entitled to compensation, this Court rejected the claim advanced in plaintiff's behalf.

The foregoing decisions of this Court are decisive of the issue in the case at bar. As the testimony of plaintiff's expert witness clearly indicates, there is no way of fixing the area immediately beneath the bolt of lightning. Plaintiff's case rests wholly on the theory that because her son was carrying a shovel that he had been using in his employment the danger of his being injured was increased. However, if such bolt was directed to the area surrounded by a circle with a radius of 12 feet, with Kroon at the center thereof, the increased hazard, under the testimony in the case, would not enter into the result. Under the opinion of the expert witness, the shovel became a factor only in the event that the bolt of lightning struck more than 12 and less than 14 feet from him. An award may not rest on conjecture. Under this record it may not be said that the shovel was a contributing factor to the death of Kroon.

Counsel have cited decisions from other States sustaining the right to compensation, because of death or injury by lightning, under workmen's compensation acts similar to the Michigan statute. Decisions of such character were cited in *Thier* v. *Widdifield, supra,* this Court refusing to follow them.

Among other decisions so cited was the holding of the Minnesota supreme court in *State; ex rel. Peoples Coal Co.*, v. *District Court,* 129 Minn 502 (153 NW 119, LRA1916A, 344), in which compensation was allowed because of death suffered as a result of being struck by lightning. The employee was engaged in the delivery of ice when a storm arose from which he apparently sought shelter under a tree. This Court in commenting on the case called attention to the fact that the decision had been criticized by the supreme court of Iowa in *Griffith* v. *Cole Bros.,* 183 Iowa 415 (165 NW 577, LRA1918F, 923). Such reference by the Iowa court was quoted, in part, as follows:

" 'The vice in this decision seems to us to be that, while it recognizes there must be more than the normal risk from lightning to which all are subject, and that the employment must necessarily accentuate the natural hazard from lightning, this is not followed to its logical end, and a recovery for injury by lightning is allowed where there was no such accentuation or abnormal risk. All that is requisite is that the employment be of such nature as that, in reason, the employee is more exposed to hazards from lightning than is one in some other employment. Cases that hold a given accident from lightning did not arise out of the course of the employment recognize that such injury may be related to the employment. See *Hoenig* v. *Industrial Commission,* 159 Wis 646 (150 NW 996, LRA1916A, 339).' "

In the course of its discussion the Iowa court quoted with approval from *Hopkins* v. *Michigan Sugar Co.,* 184 Mich 87 (LRA1916A, 310), where it was said (p 90):

"An employee may suffer an accident while engaged at his work or in the course of his employment which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it."

Under principles recognized and applied by this Court in its prior decisions, the award in the instant case cannot be sustained. An order will enter remanding to the workmen's compensation commission with directions to set aside the award in plaintiff's favor and to enter an order denying compensation. Defendants may have costs.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.