KRIST *v.* KRIST HOUSE MOVING COMPANY, INC.

WORKMEN'S COMPENSATION—DEATH—PROXIMATE CAUSE—EVIDENCE.
  Finding of workmen's compensation appeal board that president and employee of house moving company, who was asphyxiated by carbon monoxide gas poisoning, while in his car in a garage owned by the company late in the afternoon of a very cold day in the middle of January, that death occurred in the course of and arose out of the employment, *held,* supported by proof and legitimate inferences therefrom and buttressed by the presumption against suicide, where it appears he was at such place pursuant to an agreement with an employee and that they were to proceed to estimating jobs after a lunch.

SHARPE and CARR, JJ., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted January 11, 1957. (Docket No. 55, Calendar No. 46,923.) Decided April 22, 1957. Rehearing denied June 10, 1957.

Helen L. Krist, widow of Arthur E. Krist, filed her petition against Krist House Moving Company, employer, and Highway Casualty Company, insurer, for compensation because of husband's death from asphyxiation by carbon monoxide gas poisoning. Award to plaintiff. Defendants appeal. Affirmed.

*Hinks, Hinks & Darin* (*Dennis A. Darin, Jr.,* of counsel), for plaintiff.

*Markle, Markle & Eubank* (*Fergus Markle,* of counsel), for defendants.

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation §§ 209–212.

SHARPE, J. (*dissenting*).  Plaintiff, Helen L. Krist, is the widow of Arthur E. Krist, who for some time prior to his death was the owner of 1/3 of the stock of Krist House Moving Company as well as chairman of the board of directors and, also, president of the corporation.  At the time of the death of Arthur E. Krist the corporation owned about 50 houses that they had purchased from the Wayne county road commission and had moving jobs in Lansing and Ann Arbor.  The houses that the corporation purchased from the road commission were to be moved from the right-of-way acquired for the John C. Lodge Expressway in Detroit.  One of these houses was located at 15437 Wisconsin avenue in the northwest part of Detroit.  Deceased's work was estimating and running jobs on the outside.  His duties included checking routes to the buyers' new lots, arranging for work by subcontractors, getting figures together for submission to potential buyers and other details.

On January 14, 1954, deceased returned to his home for lunch and to get his car which he regularly used in his work.  When deceased failed to return home for his evening meal Mrs. Krist tried to locate him.  Arthur Krist's brother filed a missing persons report with the police the following day around 2 p.m.  A search was made that evening by relatives and some employees of Krist House Moving Company.  They found the automobile that deceased was using in the garage at the Wisconsin address.  The door of the garage was closed and the body of Krist was found behind the steering wheel of the automobile.  A newspaper was spread over the steering wheel.  There was an open bottle of wine on the floorboard of the automobile and a sandwich wrapper on the seat.  The gasoline tank was 3/4 full. The motor was not running, but the ignition key was

in the "on" position. The lights of the automobile operated, but the battery would not start the motor.

The police were called and the body removed to the Wayne county morgue where an autopsy was performed on January 16, 1954. The certificate of death shows:

"Cause of Death:

"1. Disease or condition directly leading to death (a)—Asphyxia by carbon monoxide due to auto exhaust."

Edmond Krist testified that he had last seen his brother Arthur at noon on January 14th and had received a telephone call about 4 o'clock in the afternoon from him. At that time Arthur was on Lawrence avenue and mentioned 2 locations there, 1 of which was a site where a house was to be moved the following day. In the same conversation the deceased stated he was going to locations on Normandy and Princeton and had to check the rest of the homes on the way in.

The workmen's compensation appeal board awarded plaintiff and her 3 minor children compensation for 400 weeks at the rate of $34 per week and $500 for funeral expenses.

In an opinion the appeal board stated:

"We find that Krist died as a result of breathing carbon monoxide gas generated from running the motor of his car while in the garage at the Wisconsin avenue address on or about January 14, 1954.

"Romeo Kreibich testified that as a general or mason contractor he did considerable work for or in conjunction with the corporation. On January 14, 1954, about 3:30 or 4 o'clock p.m. he talked with Krist on Lawrence avenue where Krist was laying out forms for the corporation. Kreibich and Krist agreed to meet later at 15437 Wisconsin avenue. There were some jobs on which Krist wanted estimates. They had met at the Wisconsin address.

several times before and had gone from there to estimating jobs. Kreibich expected that after meeting Krist they would eat and would go to a house on Grand River to estimate costs of necessary work. He testified that all of the estimating was done at night. It appears that Krist was on his way to 2 jobs undesignated to turn off water. There is no direct proof that Krist performed any actual duties at the Wisconsin address on January 14th although it is possible that he may have done so.    *   *   *

"We further find as follows: Krist was acting as an employee of the corporation at the time of his death. He sustained an accidental injury causing his death which arose out of and in the course of employment. There is no question but that Krist had been performing duties for the corporation before going to the Wisconsin address. He had arranged to meet Kreibich there and they were then going elsewhere to make estimates as they customarily did in the evening. This was a usual pattern and occurrence. Krist was waiting for Kreibich at the time of the accidental injury and it was his obligation to his employer to do so. This is not a regular lunch period case. Krist was simply utilizing a brief opportunity to relax and have sustenance while waiting for Kreibich to arrive so that he could continue with his work. He was waiting for Kreibich in a practical and reasonable manner. Krist could not reasonably have been expected to sit in the very cold atmosphere without running his motor. Krist had to meet Kreibich somewhere in order to pursue his work. He was doing a usual, customary and necessary thing for the benefit of the corporation at the time of the accidental injury. He was at the designated place waiting and ready to continue work."

Upon leave being granted defendants appeal and urge that the president of a corporation is not an employee within the meaning of the workmen's compensation act where the bylaws of the corporation

provide he shall have active supervision of the business.

Under our statutes (CLS 1954, § 411.7 [Stat Ann 1953 Cum Supp § 17.147]), we find that section 7 states that the term "employee" as used in this act shall be construed to mean:

"2. Every person in the service of another, under any contract of hire, express or implied."

In *Dewey* v. *Dewey Fuel Co.,* 210 Mich 370, we held that the president of a company, injured while performing yard labor under the supervision of defendant's manager, was an employee under the act.

Under CLS 1954, § 411.7 (Stat Ann 1953 Cum Supp § 17.147), "working members of partnerships, receiving wages irrespective of profits from such" may be employees under the act. In the case at bar decedent served the corporation in a dual capacity. As a director and officer of the corporation he rendered services for which he was paid $135 per month. He was also employed by the corporation and for such services he received the sum of $150 per week. It is well established that officers of a corporation are not generally as subject to hazards in the performance of duties as employees of a corporation and, hence, are not in the position of employees. In the case at bar decedent was in the employ of the corporation and while rendering services as an employee is not barred from receiving compensation. Decedent received wages irrespective of profits and was not engaged in executive work at the time of his death.

The principal question in this case may be stated as follows: Was the deceased acting as an employee in the course of his employment at the time of his death? In support of such claim plaintiff shows that on the day of his death deceased came home for lunch and told her that he had some estimating to

do and would likely be late for dinner; that the house and garage where the body was found were owned by the corporation.

Romeo Kreibich, a witness for plaintiff, testified that the last time he talked to deceased was about 4 p.m., on January 14th at a place on Lawrence avenue, that at that time he and deceased agreed to meet at the Wisconsin house. He also testified:

"*Q. (By Mr. Darin)*:  Is the answer then that you made no plans on Lawrence avenue to meet later in the day?

"*A.* Oh, yes, we did.  We was, I was driving to Lawrence, he was coming from, I mean towards Hamilton on Lawrence, and he was coming the opposite way and stopped. * * *

"*Q. (By Mr. Darin)*:  Did he designate which jobs they were?

"*A.* No, he didn't.  He just said there was 2 jobs the water wasn't turned off.  It was a cold day and he was going to, and I said 'We'll meet.'

"He said he'd meet me at Wisconsin because before that he had talked about some other jobs that he wanted an estimate on."

On cross-examination the witness testified:

"*Q. (By Mr. Markle)*:  But you had nothing to do at 15437 Wisconsin that you were going to do with Art Krist?

"*A.* Well, we just had agreed to meet there, that was all.

"*Q.* And isn't it a fact that you expected to go eat supper with Art after you went there?

"*A.* We usually done that before we estimated. We had a bite to eat as a rule.

"*Q.* You had on previous occasions met Art Krist at that same address and then gone and had supper with him?

"*A.* Well, we went to supper, we go after we have a bite to eat.  I wouldn't say we have a meal, but we

have a sandwich. From there on we go to another job, if he had jobs, otherwise I wouldn't meet him there.

"*Q.* Then you had met him previously at this same location and then you had gone and had supper, and then gone to estimate some jobs, is that right?

"*A.* That's right.

"*Q.* And that is what you expected to do on this evening?

"*A.* Yes, I think so."

The most that can be said from the above evidence is that deceased and Kreibich agreed to meet at the Wisconsin house, have lunch and go and estimate a job. There is no evidence that deceased performed any duties for the corporation while in the garage at the Wisconsin house.

It is a well-established rule that an inference must be based upon established facts and not upon another inference. In the case at bar it is established that deceased drove his car into the garage. There is an inference that he shut the garage door, an inference that he ate part of a sandwich and possibly took a sip of wine. There are no established facts to indicate that deceased and Kreibich were to discuss corporation business at the Wisconsin house. We find no evidence that deceased was conducting any business for the corporation while on the Wisconsin property. He was not in the discharge of some duty he was authorized to perform and consequently not in the course of his employment at the time of his death. See *Salmon* v. *Bagley Laundry Co.,* 344 Mich 471.

Award should be vacated, with costs.

Carr, J., concurred with Sharpe, J.

Black, J. The appeal board, relying on *Spero* v. *Heagany & Draper Company,* 256 Mich 403; and *Pa-*

*pinaw's* (*Papinaw* v. *Grand Trunk Western R. Co. of Canada*, 189 Mich 441, 448 [12 NCCA 243]) rule—"an employee, not actually at work, is on duty if required to be at a certain place on call and ready for work"—, found that Mr. Krist's death occurred in the course and out of his employment. Such finding is supported by proof and legitimate inference from proof, and is buttressed by the presumption against suicide (*Shiovitz* v. *New York Life Ins. Co.*, 281 Mich 382). Whether Krist was overcome while reading a newspaper and refreshing himself, during inferable wait for Kreibich on "a very cold day" with the garage door closed, or whether he entered the great adventure with suicidal intent, were, in my view, questions of fact for the administrative tribunal to which determinations of such nature are committed.

It should be noted that Kreibich did actually go to the Wisconsin avenue address in accordance with his appointment with Mr. Krist. Kreibich was accompanied by one Hatcher, who did electrical work for the Krist company. The two arrived at the agreed address between 4 and 4:30 in the afternoon and waited for Mr. Krist "a good 30 minutes." While the two were waiting they noticed that the garage door was closed and that there were "fresh tracks in the snow" leading to or from the garage. They did not look in the garage, however, Kreibich having concluded that the tracks led outward rather than inward.

I vote to affirm.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, and KELLY, JJ., concurred with BLACK, J.