WHETRO *v.* AWKERMAN.

EMERY *v.* HUGE COMPANY.

OPINION OF THE COURT.

1. WORKMEN'S COMPENSATION — ACT OF GOD — COMPENSABILITY — PROXIMATE CAUSE.

A tornado, like a bolt of lightning or an earthquake or flood, is an act of God, and if the phrase "out of" the employment, in the workmen's compensation act, necessarily entails the notion of proximate causality, no injury received because of an act of God should be compensable (CL 1948, § 412.1, as amended by PA 1954, No 175).

2. WORKMEN'S COMPENSATION—PROXIMATE CAUSE—EMPLOYMENT— INJURY—COMPENSABILITY—DEFENSES—ACT OF GOD.

A relationship of proximate causality between employment and injury is no longer necessary to establish compensability, and an act of God is no longer regarded as a defense to a claim for work-connected injury (CL 1948, § 421.1, as amended by PA 1954, No 175).

3. WORKMEN'S COMPENSATION — TORTS — FAULT — EMPLOYER — EMPLOYEE — STATUTES.

Concept of tort law that one should not pay for injuries to another unless he is at fault is inconsistent with the law of workmen's compensation (CL 1948, § 421.1, as amended by Pa 1954, No 175).

4. WORKMEN'S COMPENSATION — STATUTES — PURPOSE — BENEFITS — BURDEN.

The purpose of the workmen's compensation act is to provide in the most efficient, dignified, and certain form financial and

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 58 Am Jur, Workmen's Compensation § 198.

[3, 4, 13] 58 Am Jur, Workmen's Compensation § 2.

[6–8, 10–12, 14, 15] 58 Am Jur, Workmen's Compensation § 209 *et seq.*

[9] 20 Am Jur 2d, Courts § 184.

medical benefits for victims of work-connected injuries and to allocate the burden of those payments to the most appropriate source of payment, the consumer of the product (CL 1948, § 412.1, as amended by PA 1954, No 175).

5. WORKMEN'S COMPENSATION — BENEFITS — INJURY — EMPLOYMENT — PROXIMATE CAUSE.

Workmen's compensation should be paid where employment is the occasion of an injury even though the employment was not the proximate cause of injury (CL 1948, § 412.1, as amended by PA 1954, No 175).

6. WORKMEN'S COMPENSATION—ACT OF GOD—OUT OF EMPLOYMENT.

An employee who was injured when a tornado destroyed the residence where he was working for his employer and the wife of an employee who was killed when the motel in which he was staying while on a business trip for his employer was destroyed by a tornado are entitled to recover workmen's compensation for their injuries because the employment was the occasion for the injury, the injuries arising out of and in the course of their employment (CL 1948, § 412.1, as amended by PA 1954, No 175).

7. WORKMEN'S COMPENSATION—ACT OF GOD—OUT OF EMPLOYMENT —PROSPECTIVE APPLICATION.

Decision that injuries suffered by an employee in the course of his employment from a natural catastrophe or "act of God" arose "out of" the employment within the meaning of the workmen's compensation act will be applied to the cases which were the occasion of the decision and to all claims for compensation arising after the date of filing the opinion.

SEPARATE OPINION.

BLACK, J.

8. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—OUT OF EMPLOYMENT—INJURY—ACT OF GOD—COMPENSABILITY.

*The settled judicial view in this state has been that a workman engaged in the course of employment, at the time an otherwise compensable injury is sustained, does not receive an injury "out of" his employment where the immediately causal force of that injury is an act of God, and hence the injury is not compensable (CLS 1961, § 412.1).*

9. COURTS—APPEAL AND ERROR—STARE DECISIS.

Stare decisis *is usually the wise judicial policy because in most matters it is more important that the applicable rule of law be settled than that it be settled right.*

10. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—OUT OF EMPLOYMENT—ACT OF GOD—STATUTES.

*A workman who is injured by an act of God while engaged in the course of his employment, doing the work assigned to him in the place or under the circumstances designated by the employer, receives an injury arising "out of" that employment within the meaning of the workmen's compensation act (CLS 1961, § 412.1).*

11. WORKMEN'S COMPENSATION—OUT OF EMPLOYMENT—DECISIONAL LAW—OVERRULING—PROSPECTIVE APPLICATION.

*Decision overruling long-settled case law of workmen's compensation by holding that an injury received in the course of employment from operation of an "act of God" arises "out of" employment within the meaning of the workmen's compensation act should be given wholly prospective operation and not be applied to the cases which were the occasion of the decision.*

12. WORKMEN'S COMPENSATION—ACT OF GOD—OUT OF EMPLOYMENT—PROSPECTIVE APPLICATION.

*Decision that injuries suffered by an employee in the course of his employment from a natural catastrophe or "act of God" arose "out of" the employment within the meaning of the workmen's compensation act will be applied to the cases which were the occasion of the decision and to all claims for compensation arising after the date of filing the opinion.*

DISSENTING OPINION.

T. E. BRENNAN, C. J., and DETHMERS and KELLY, JJ.

13. WORKMEN'S COMPENSATION—STATUTES—PURPOSE—LIABILITY—FAULT.

*The workmen's compensation law is society's expression of the moral responsibility of employers and consumers to the workmen whose health and lives are sacrificed to industrial and commercial progress and production, and its function is to place the financial burden of industrial injuries upon the industries themselves, spreading the cost ultimately upon consumers.*

14. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—OUT OF
    EMPLOYMENT—STATUTES—CONSTRUCTION.

   *The terms "arising out of" and "in the course of" used in the*
   *workmen's compensation act mean different things, and not*
   *every injury received by a workman "in the course of" his*
   *employment arises "out of" that employment.*

15. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—OUT OF
    EMPLOYMENT—STATUTES—CONSTRUCTION.

   *Injuries received by a workman in the course of his employ-*
   *ment from forces or agencies such as lightning, flood, tor-*
   *nadoes, or jealous wives are not a by-product of the indus-*
   *trial revolution, nor are they in any sense the moral*
   *responsibility of those who profit by, or enjoy the fruits of,*
   *our modern industrialized society, and should not be com-*
   *pensable as arising "out of" the employment.*

Appeal from Court of Appeals, Division 2, Hol-
brook, P. J., and J. H. Gillis and R. B. Burns, JJ.,
affirming Workmen's Compensation Appeal Board.
Submitted April 11, 1969. (Calendar No. 13, Docket
No. 52,023.) Decided March 12, 1970.

11 Mich App 89, affirmed.

Carl Whetro presented his claim for workmen's
compensation against Louva B. Awkerman, his em-
ployer, and the Michigan State Accident Fund. The
Workmen's Compensation Appeal Board affirmed
the referee's award to plaintiff. Defendant appealed
to the Court of Appeals. Affirmed. Defendant ap-
peals. Affirmed.

*Warner, Norcross & Judd (Wallson G. Knack,* of
counsel), for plaintiff.

*Munroe, Nobach & Hammer,* for defendant.

Appeal from Workmen's Compensation Appeal
Board. Plaintiff's delayed application for leave to

appeal to Supreme Court prior to decision by the
Court of Appeals granted. Submitted April 11,
1969. (Calendar No. 12, Docket No. 52,119.) De-
cided March 12, 1970.

Helen B. Emery presented a claim for workmen's
compensation for the death of her husband, Henry
E. Emery, against his employer, Huge Company,
and its insurer, Insurance Company of North Amer-
ica. The Workmen's Compensation Appeal Board
affirmed the referee's award of compensation, med-
ical, hospital, and burial expenses. Defendants ap-
pealed to the Court of Appeals. Leave to appeal
to the Supreme Court granted prior to decision by
the Court of Appeals. Affirmed.

*Hillman, Baxter & Hammond* (*William S. Farr,*
of counsel), for plaintiff.

*Cholette, Perkins & Buchanan* (*Edward D. Wells,*
of counsel), for defendants.

T. G. KAVANAGH, J. These cases were consolidated
pursuant to our order of September 5, 1968, wherein
we granted leave to appeal prior to decision by the
Court of Appeals in the case of *Emery* v. *Huge
Company* (1968), 381 Mich 774. They were argued
together in our April, 1969, term.

They turn on the same question, for the damages
for which workmen's compensation was awarded in
each case were caused by the Palm Sunday, 1965,
tornadoes which devastated parts of southern Michi-
gan.

Carl Whetro was injured when the tornado de-
stroyed the residence wherein he was working for
his employer and seeks reimbursement for his med-
ical expenses. Henry E. Emery was killed when the

motel in which he was staying while on a business trip for his employer was destroyed by the tornado, and his widow seeks compensation for his death.

In each case the hearing referee found that the employee's injury arose out of and in the course of his employment. The award was affirmed by the appeal board in each case and by the Court of Appeals in the Whetro case.

The defendant-appellants in both cases base their defense on the assertion that tornadoes are "acts of God" or acts of nature and injuries which are caused by them do not arise "out of" the employment and hence are not compensable under the workman's compensation act.[1] For this reason they maintain that the cases were erroneously decided as a matter of law and the awards should be set aside.

The appellants in each case maintain that the injury did not arise "out of" the employment because that phrase, as it is used in the act, refers to a causal connection between the event which put in motion the forces which caused the injury and the work itself or the conditions under which it is required to be performed.

Employment as a caretaker-gardner or salesman, they argue, does not include tornadoes as incidents or conditions of the work, and the path of injury is determined by the tornado, not the employment.

Appellants cite a series of Michigan decisions involving injury by lightning: *Klawinski* v. *Lake Shore & M. S. R. Co.* (1915), 185 Mich 643; *Thier* v. *Widdifield* (1920), 210 Mich 355; *Nelson* v. *Country Club of Detroit* (1951), 329 Mich 479; *Kroon* v. *Kalamazoo County Road Commission* (1954), 339 Mich 1, in which compensation was denied, and assert that a tornado is like lightning in that it acts

---

[1] PA 1912 (1st Ex Sess), No 10, pt 2, § 1, as amended by PA 1943, No 245 (CL 1948, § 412.1), and by PA 1954, No 175 (Stat Ann 1968 Rev § 17.151).

capriciously, leaving its victims and the untouched side by side. The decisions in all of these "lightning cases" denied compensation on the ground that the injury did not arise "out of" the employment because the employment did not expose the workman to any increased risk or to a more hazardous situation than faced by others in the area.

The Court of Appeals was able to distinguish between a tornado and a bolt of lightning as a causative force of injury and base its decision affirming the award for Carl Whetro on the reasoning of the Massachusetts supreme court in *Caswell's* case (1940), 305 Mass 500 (26 NE2d 328), wherein recovery was allowed for injuries received when a brick wall of the employer's factory was blown down on workmen during a hurricane. This "contact with the premises" met the requirement that the injury arise "out of" the employment in the mind of the Court of Appeals.

We are unable to accept the distinction drawn between a tornado and bolt of lightning when viewed as the cause of an injury. As we see it, a tornado, no less than a bolt of lightning or an earthquake or flood is an "act of God" and if the phrase "out of" the employment in the workmen's compensation act necessarily entails the notion of proximate causality, no injury received because of an "act of God" should be compensable.

But we are satisfied that it is no longer necessary to establish a relationship of proximate causality between employment and an injury in order to establish compensability. Accordingly we no longer regard an "act of God" whether it be a tornado, lightning, earthquake, or flood as a defense to a claim for a work-connected injury. Such a defense retains too much of the idea that an employer should not pay compensation unless he is somehow at fault.

This concept from the law of tort is inconsistent with the law of workmen's compensation.

The purpose of the compensation act as set forth in its title is to promote the welfare of the people of Michigan relating to the liability of employers for injuries or death sustained by their employees. The legislative policy is to provide financial and medical benefits to the victims of work-connected injuries in an efficient, dignified, and certain form. The act allocates the burden of such payments to the most appropriate source of payment, the consumer of the product.[2]

Fault has nothing to do with whether or not compensation is payable. The economic impact on an injured workman and his family is the same whether the injury was caused by the employer's fault or otherwise.

We hold that the law in Michigan today no longer requires the establishment of a proximately causal connection between the employment and the injury to entitle a claimant to compensation. The cases which have allowed recovery for street risks,[3] increased risks,[4] and on-the-premises accidents[5] were made without consideration of the proximate causal

---

[2] This is the purpose of workmen's compensation legislation generally. See Larson, Workman's Compensation Law, chap 1, §§ 1.01–2.30.

[3] The most significant of the early street-risk cases was Kunze v. Detroit Shade Tree Co. (1916), 192 Mich 435. The position adopted there continually expanded through Beaudry v. Watkins (1916), 191 Mich 445; Clifton v. Kroger Grocery & Baking Co. (1922), 217 Mich 462; Arnested v. McNicholas (1923), 223 Mich 488; Stockely v. School District No. 1 of Portage Township (1925), 231 Mich 523; Widman v. Murray Corporation of America (1929), 245 Mich 332; Bisdom v. Kerbrat (1930), 251 Mich 316; Morse v. Port Huron & Detroit R. Co. (1930), 251 Mich 309; Mann v. Board of Education of City of Detroit (1934), 266 Mich 271; Konopka v. Jackson County Road Commission (1935), 270 Mich 174; Anderson v. Kroger Grocery & Baking Company (1949), 326 Mich 429; and culminated in Le Vasseur v. Allen Electric Company (1953), 338 Mich 121.

[4] E.g. Arnested v. McNicholas (1923), 223 Mich 488.

[5] E.g. Brink v. J. W. Wells Lumber Co. (1924), 229 Mich 35.

connection between the nature of the employment and the injury. They have brought the law in Michigan to the point where it can be said today that if the employment is the occasion of the injury, even though not the proximate cause, compensation should be paid.

Such a development[6] of the Michigan law is paralleled by the development of the law in England and Massachusetts—the two jurisdictions which served as Michigan's model in the original legislative drafting and judicial construction of the workmen's compensation act.

The early Michigan case of *Hopkins* v. *Michigan Sugar Co.* (1915), 184 Mich 87, imported the "causality" concept into the requirement that the injury must arise "out of" the employment. The court drew this interpretation from the English case of *Fitzgerald* v. *Clark & Sons* (1908) 2 KB 796, and *McNicol's Case* (1913), 215 Mass 497 (102 NE 697, LRA 1916A, 306). Both of these jurisdictions have since adopted the doctrine of positional risk. See *Powell* v. *Great Western Railway Co.* (1940), 1 All E R 87, and *Baran's Case* (1957), 336 Mass 342 (145 NE2d 726).

The Massachusetts court said in *Baran's* case, p 344: "We think that they [recent cases] disclose the development of a consistent course which is a departure from the earlier view expressed, for example in *McNicol's* case. * * * The injury 'need not arise out of the nature of the employment. * * * The question is whether his employment brought him in contact with the risk that in fact caused his death.' "

The English court, in *Powell, supra,* held that if the work required the employee to be at the place of injury the accident arose "out of" his employment.

---

[6] See Appendix "A" for cases indicative of the evolution of the law in Michigan.

Accordingly, we hold that the employment of Carl Whetro and Henry E. Emery in each case was the occasion of the injury which they suffered and therefore the injuries arose "out of" and in the course of their employment.

The award in each case is affirmed.

For the reasons set forth therein, in keeping with the policy observed in *Bricker* v. *Green* (1946), 313 Mich 218; and *Parker* v. *Port Huron Hospital* (1960), 361 Mich 1, the rule of law announced herein will apply to the instant case and all claims for compensation arising after March 12, 1970, the date of the filing of this opinion.

T. M. KAVANAGH and ADAMS, JJ., concurred with T. G. KAVANAGH, J.

### APPENDIX "A"

The evolutionary trend to our present holding is evidenced by the following chronological list of cases: *Kunze* v. *Detroit Shade Tree Co.* (1916), 192 Mich 435; *Haller* v. *City of Lansing* (1917), 195 Mich 753; *Porritt* v. *Detroit United Railway* (1917), 199 Mich 200; *Malone* v. *Detroit United Railway* (1918), 202 Mich 136; *Arnested* v. *McNicholas* (1923), 223 Mich 488; *Brink* v. *J. W. Wells Lumber Co.* (1924), 229 Mich 35; *Favorite* v. *Kalamazoo State Hospital* (1927), 238 Mich 566; *Widman* v. *Murray Corporation of America* (1929), 245 Mich 332; *Morse* v. *Port Huron & Detroit R. Co.* (1930), 251 Mich 309; *Babl* v. *Pere Marquette R. Co.* (1935), 272 Mich 184; *Thiede* v. *G. D. Searle & Co.* (1936), 278 Mich 108; *Amicucci* v. *Ford Motor Co.* (1944), 308 Mich 151; *Anderson* v. *Kroger Grocery & Baking Company* (1949), 326 Mich 429; *Brandner* v. *Myers Funeral Home* (1951), 330 Mich 392; *Le Vasseur* v. *Allen Electric Company* (1953), 338 Mich 121; *Salmon* v.

*Bagley Laundry Company* (1955), 344 Mich 471; *Mack* v. *Reo Motors, Inc.* (1956), 345 Mich 268; *Ditch* v. *General Motors Corporation* (1956), 345 Mich 178; *Krist* v. *Krist House Moving Co., Inc.* (1957), 348 Mich 230; *Sheppard* v. *Michigan National Bank* (1957), 348 Mich 577; *Dyer* v. *Sears, Roebuck & Company* (1957), 350 Mich 92; *Freiborg* v. *Chrysler Corporation* (1957), 350 Mich 104; *Wheeler* v. *Department of Conservation* (1957), 350 Mich 590; *Crilly* v. *Ballou* (1958), 353 Mich 303; and *Lasiewicki* v. *Tusco Products Company* (1963), 372 Mich 125.

This list is not intended to be exhaustive but merely representative of the evolutionary strains apparent in the Court's case law. To correlate them and make them meaningful is but to say that when the employment occasions the injury, then the injury arises "out of" the employment.

BLACK, J. (*for affirmance*). These cases present another "out of and in the course of" question, arising under perdurable § 1 of part II of the workmen's compensation law (CLS 1961, § 412.1). Had the question not been previously decided, I would be ready to support the applied reasoning of Justice T. G. KAVANAGH, and also that of Judges BURNS and HOLBROOK in *Whetro* (11 Mich App 89). The question however has been settled by a series of unanimous decisions of this Court; the quoted statutory phrase meanwhile remaining as it was when the Court undertook first to examine it.

On that first occasion the Court ruled without dissent (*Klawinski* v. *Lake Shore & M. S. R. Co.* [1915], 185 Mich 643) that the death of an employee engaged "in the course of," the death having been caused *directly* by a bolt of lightning striking from above during "a violent wind and rain storm," did not arise "out of" his employment. The reasoning of the

Court was based upon a memorandum opinion of the industrial commission of Wisconsin wherein this question was posed, "Did the injury grow out of the employment and did the industry cause the injury?", with answer as follows (p 648 of our report):

"We are of the opinion that this language refers to industrial accidents; those caused by the industry and chargeable to the industry, and does not apply to injuries resulting from those forces of nature described in the common law as acts of God, such forces as are wholly uncontrolled by men."[1]

For *Klawinski's* case these controlling facts were stipulated:

Mr. Klawinski was a section hand, working for the defendant railroad. The section gang of which Mr. Klawinski was a member had been working at the time on defendant's right-of-way when the storm came up. Upon order of the foreman and assistant foreman, most of the gang including Mr. Klawinski took shelter in a nearby barn. While they were in the barn, the storm meanwhile raging, Mr. Klawinski was killed by a bolt of lightning.

*Klawinski* was followed by *Nelson* v. *Country Club of Detroit* (1951), 329 Mich 479, and again by *Kroon* v. *Kalamazoo County Road Commission* (1954), 339 Mich 1. Both opinions were unanimous. The three cases stand for a settled judicial view and a uniformly continuant application of that view over a long period of years. The precise essence thereof is that, no matter the fact of a workman being engaged in the course of his employment at the time, an otherwise compensable injury then and there sustained by him does not arise "out of" his employ-

---

[1] This reasoning is quite unsound. Our statute has never, whether by words employed or record left by the 1912 drafting committee, exacted of a claimant that he show "the industry caused the injury." He need only show "out of and in the course of."

ment, if the immediately causal force of that injury
is what all three cases refer to as an act of God.

I am unable to distinguish the three cited cases
from that which is before us. Nor is any member
of the Court. All agree that the lightning bolt which
struck the barn and killed Mr. Klawinski came from
above, out of that "violent wind and rain storm" to
which the respondent industrial board referred in
its findings of fact (pp 644, 645).[2] The legal result
would have been the same, under *Klawinski*, had that
"violent wind and rain storm" blown the barn down
upon Mr. Klawinski with fatal effect.

We are learning more and more not to tinker with
or water down the substance of a series of consistent-
ly unanimous decisions which have construed and
applied a standing statute, even though we might
look upon each and all of those decisions as wrong
from the beginning. See the discussion in *Halfacre*
and *Keller* (1962), 368 Mich 366–399.[3] Experience
since then, culminating with *Powers* v. *City of Troy*
(1968), 380 Mich 160, has impressed the Court again
with the wisdom of an expression employed by Mr.
Justice Brandeis when he dissented in *Burnet* v.
*Coronado Oil & Gas Company* (1932), 285 US 393
(52 S Ct 443, 76 L Ed 815); an expression we ap-
plied but 6 months ago in *Abendschein* v. *Farrell*
(1969), 382 Mich 510. The expression was that
*stare decisis* is usually the wise policy because "in
most matters it is more important that the applica-
ble rule of law be settled than that it be settled
right." That is so here.

---

[2] I agree fully with Justice T. G. KAVANAGH when he says "We
are unable to accept the distinction drawn between a tornado and
bolt of lightning when viewed as the cause of his injury." That
is the very reason why I find myself bound to follow the *Klawinski,
Nelson* and *Kroon* cases.

[3] *Halfacre* v. *Paragon Bridge & Steel Company* (1962), 368 Mich
366; *Keller* v. *Fraser Stamping Company* (1962), 368 Mich 397.—
REPORTER.

As in the *Halfacre* and *Keller* cases, I do not believe that *Klawinski, Nelson* and *Kroon* were settled right. It seems to me that if it is shown that a workman is engaged in the course of his employment when he is stricken violently from on high, whether by windstorm, hurricane, tornado, typhoon, cloudburst resulting in a flash flood, or say an earthquake, then whatever disabling or fatal injury is sustained by him has arisen out of his employment as well as in the course thereof.

The very fact that the workman is engaged in the course of his employment, literally doing the work assigned to him by the employer in the place or under the circumstances designated by such employer, is sufficient to establish that he was stricken "out of" that employment.

There are occasions when, to attain some judgment of a case in which the Court finds itself fractured into indecisive groups, some one Justice should recede from views firmly held by him. This is such a case, as was *Halfacre, supra,* and other cases cited by the writer in *Wayne Circuit Judges* v. *Wayne County* (1969), 383 Mich 10, 33, 38, 39.

Here, in *Whetro* and *Emery,* I would vote to affirm with declaration of overrulement of *Klawinski, Nelson* and *Kroon,* effective for application to like claims for workmen's compensation arising *after* this date, just as was done in *Montana Horse Products Co.* v. *Great Northern R. Co.* (1932), 91 Mont 194 (7 P2d 919); *Sunburst Oil & Refining Co.* v. *Great Northern R. Co.* (1932), 91 Mont 216 (7 P2d 927); *on motion for rehearing* 91 Mont 221 (7 P2d 927, 929); *affirmed Great Northern R. Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 US 358, 363–366 (53 S Ct 145, 77 L Ed 360, 85 ALR 254). However, some of the Brethren would not only so overrule but would make such overrulement effective for these

cases of *Whetro* and *Emery,* as in *Bricker* v. *Green* (1946), 313 Mich 218, and *Parker* v. *Port Huron Hospital* (1960), 361 Mich 1. The circumstances of disagreement being what they are, I now join these Brothers and cast my vote consistent with theirs, without receding from the views first expressed by me in *Williams* v. *City of Detroit* (1961), 364 Mich 231, 270, 290.

T. E. BRENNAN, C. J. (*dissenting*). The function of the workmen's compensation act is to place the financial burden of industrial injuries upon the industries themselves, and spread that cost ultimately among the consumers.

This humane legislation was developed because the industrialization of our civilization had left in its wake a trail of broken bodies.

Employers were absolved from general liability for negligence, in exchange for the imposition of more certain liability under the act.

But it is a mistake to say that employers were absolved from fault. Liability is the basis of legal remedy. Fault is the basis of moral responsibility.

The workmen's compensation law is society's expression of the moral responsibility of employers and consumers to the workmen whose health and whose lives are sacrificed to industrial and commercial progress and production.

Fault is not the same thing as proximate cause. The compensation law does not use the word *cause.* Rather, it expresses the concept of employer and consumer responsibility in the phrase "arising out of and in the course of" the employment.

The terms "arising out of" and "in the course of" are not redundant. They mean two different things. An adulterous cobbler shot at his last by his jealous wife may be "in the course of" his employment.

But the injury does not "arise out of" his job. On what basis of moral responsibility should his injuries be paid for by his employer? By what logic would society decree that his disability should add a farthing to the price of shoes?

The workmen's compensation law is not a utopian attempt to put a price tag on all human suffering and incorporate it into the cost of living.

Lightning, flood, tornadoes and estranged wives will always be with us, in this vale of tears. They were the occasion of human injury when our forebears were tilling the soil with sharp sticks. They are not a by-product of the industrial revolution, nor are they in any sense the moral responsibility of those who profit by, or enjoy the fruits of, our modern industrialized society.

I would reverse without apology for the precedents.

Dethmers and Kelly, JJ., concurred with T. E. Brennan, C. J.