HALFACRE *v.* PARAGON BRIDGE & STEEL COMPANY.

Workmen's Compensation—Minors—Hand Injuries—Double Compensation.
Minor, 17 years of age, who had deliberately misrepresented his age as 21 when employed, *held*, entitled to double workmen's compensation for injuries to hand incurred while illegally employed (CL 1948, § 408.60; CLS 1956, § 411.7).

Carr, C. J., and Dethmers and Kelly, JJ., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted June 6, 1962. (Docket No. 10, Calendar No. 49,617.) Decided December 4, 1962.

Daniel Halfacre presented his claim against Paragon Bridge & Steel Company, employer, and Michigan Mutual Liability Company, insurer, for compensation because of injury to hand in punch press while employed as minor. Award of double compensation. Defendants appeal. Affirmed.

*Sauer & Girard* (*Henry A. Compeau* and *George L. Downing,* of counsel), for plaintiff.

*James L. Schueler* and *Ray R. Ravary,* for defendants.

References for Points in Headnote
58 Am Jur, Workmen's Compensation § 152.
Applicability and effect of workmen's compensation act in cases of injury to minors. 14 ALR 818, 33 ALR 337, 49 ALR 1435, 60 ALR 847, 83 ALR 416, 142 ALR 1018.

SOURIS, J.   Since 1927 (PA 1927, No 162) our workmen's compensation law has provided (first, for injured employees between the ages of 16 and 18 and then, by PA 1929, No 113, for those under 18 years of age):

"That any minor under 18 years of age whose employment at the time of injury shall be shown to be illegal shall, in the absence of fraudulent use of permits or certificates of age, in which case only single compensation shall be paid, receive compensation double that provided elsewhere in this act." CLS 1956, § 411.7 (Stat Ann 1960 Rev § 17.147).

CL 1948, § 408.60 (Stat Ann 1960 Rev § 17.20), prohibits employment of minors in certain occupations.   It also provides for the issuance of permits without which no minor under the age of 18 years legally may be employed in certain occupations and for certificates by which a minor can establish his age conclusively for employment purposes.   In 1927, at the time of enactment of the statutory provision quoted above, CL 1948, § 408.60 (Stat Ann 1960 Rev § 17.20), read, as it reads now, in its presently relevant parts as follows:

"Sec. 10.   No child under 15 years of age shall be employed, permitted or suffered to work in or in connection with any mercantile institution, store, office, hotel, laundry, manufacturing establishment, mine, bowling alley, billiard or pool room conducted for profit, theater, passenger or freight elevator, factory or workshop, quarry, telegraph or messenger service within this State during school hours: Provided, This section shall not apply to any child of the age of 14 years or over, working on Saturdays or other days during the school year, outside of school hours or during the established vacation period in preserving perishable goods in fruit or vegetable canning establishments or in any mercantile institutions, store, office, hotel, laundry, manufacturing

establishments, factory or workshop, quarry, tele-
graph or messenger service within this State * * *

"(a) It shall be the duty of every mercantile in-
stitution, store, hotel, office, laundry, manufacturing
establishment, mine, bowling alley, workshop,
quarry, telegraph or messenger service or any per-
son coming within the provisions of this act to keep
a register in which will be recorded the name, birth-
place, age and place of residence of every person
employed under the age of 18 years and it shall be
unlawful for any such establishment or person to
hire or employ or permit to be hired or employed
or suffer to work, any child under the age of 18
years without there is first provided and placed on
file in the business office thereof a permit or cer-
tificate. Such permit or certificate shall be issued
by the superintendent of schools of the school district
in which such child resides, or the county commis-
sioner of schools, or some one duly authorized by him
in writing, any of whom shall have power to ad-
minister oaths in relation thereto. Such permit or
certificates shall be returned immediately to the
issuing officer by the employer when such child
leaves such employment prior to reaching the age
of 18 years. A child shall be considered as having
withdrawn from his employment when he or she
shall have absented himself or herself from work
for 5 full working days without explanation. Every
limited vacation permit, hereinafter to be described,
shall, upon its expiration, be void and of no effect.
The said register and permit or certificate shall be
produced for inspection on demand of any authorized
representative of the commission. No fee shall be
charged for such permit or certificate or other record
required by this act by any officer by whom it shall
be issued. Every employer complying with the pro-
visions of this section shall be at liberty to employ
the person so presenting the permit or certificate
hereinbefore referred to, and is justified in consider-
ing and treating such person as of the age shown
in such permit or certificate and shall not be liable,

if it transpire that such person is under the age
represented in such permit or certificate, to any
greater extent than such employer would be liable
if such person were of the age represented.

"(b) The person authorized and required to issue
such permit or certificate shall not issue the same
until he has received, examined, approved and filed
the following papers duly executed:

"First: The school report of said child properly
filled out and which shall be signed by the principal
or chief executive officer of the school which such
child has attended shall be furnished on demand of
a child entitled thereto. It shall contain a state-
ment that the child has attended the public school,
or schools equivalent thereto, or parochial schools,
previous to applying for such school record, and is
able to read intelligently and write legibly simple
sentences in the English language, and in the case of
the public schools, has passed satisfactorily the work
of the school up to and including the work of the
sixth grade, as provided in the course of study of
the public schools, or in the case of schools other
than public, the equivalent thereto. Such school
record shall also give the age and residence of the
child as shown on the records of the school and the
name of its parents or guardians or custodians:
Provided, That in the case of limited vacation per-
mits or in the case of persons over 16 years of age
requirements relating to educational qualifications
shall be waived. Limited vacation permits referred
to in this act shall be construed to mean permits
issued for working during vacation periods and on
Saturdays or other days during the school year out-
side of school hours and all such permits shall expire
upon the first Monday in September commonly called
Labor day; shall contain a conspicuous statement of
the time at which they shall expire and shall be of
a special color distinct from the regular permit or
certificate.

"Second: A passport, or duly attested transcript
of the record of birth, as kept by any duly authorized

public authority, or a record of baptism or other religious record, showing the date and place of birth of such young person;

"Third: A statement from a physician connected officially with the board or department of health, which shall be required, however, only in case the above mentioned official or religious record cannot be produced, which statement shall certify that in the opinion of the physician issuing said statement, the young person is of the age stated therein, is in sound health and physically able to perform the work which it intends to do. Such statements shall also certify to the correct weight and height of said young person, and shall be kept on file by the person issuing working permits or certificates; such person may in his discretion require also an affidavit from the parents or guardian of the young person concerned or other evidence as additional proof of age.

"(c) On the permit or certificate shall appear a statement by the issuing officer that he has examined said child; that in his opinion the child can read intelligently and write legibly simple sentences in the English language; that in his opinion the young person is of the age represented and has reached the normal development of a child of its age and is in sound health and physically able to perform the work which it intends to do, and that, in his opinion, the services of the child are essential to the support of itself or its parents: Provided, That permits or certificates for young persons 16 years or more of age and permits for vacation periods and Saturdays or other days during the school year outside of school hours shall not certify that the wages of the child are essential to the support of the family. In doubtful cases, physical fitness for such work shall be determined by a medical officer of the board or department of health. Every such permit or certificate shall be signed in the presence of the officer issuing the same by the child in whose name it is issued; and shall state the date and place of birth of the child, and describe the color of the hair

and eyes, the height and weight and any distinguishing facial marks of such child, and that the paper required by the preceding sections has been duly received, examined, approved and filed, and that the child named in such permit or certificate has appeared before the issuing official and been examined;

"(d) Any person who shall make a false statement, transcript, passport, school certificate, certificate of physical fitness, school record or any other writing required to be made or filed by the provisions of this section shall be deemed guilty of a misdemeanor and shall be punished by a fine of not less than 10 or more than 100 dollars or imprisonment for not less than 10 days nor more than 90 days, or by both such fine and imprisonment in the discretion of the court;

"(e) Any child under 17 years of age living or working in a school district maintaining a continuation school under Act No. 421 of the Public Acts of 1919, as amended, shall be subject to that act."*

The appeal board of the workmen's compensation department (by a 2-to-1 vote) affirmed a referee's award to claimant of double compensation for injuries incurred while illegally employed as a minor, claimant not having made fraudulent use of permits or certificates of age. Defendants' appeal is based upon the claim that Halfacre misrepresented his age to defendant employer when applying for employment, having deliberately misstated his age to be 21 when, in fact, he was still only 17. They claim that there was no evidence of bad faith on the part of the employer in hiring Halfacre and that, consequently, Halfacre should be estopped by his wilful misrepresentation of age from claiming the double compensation benefits provided by CLS 1956,

---

* PA 1919, No 421, referred to, was repealed by PA 1927, No 319, and its provisions, incorporated in CL 1948, § 373.1, which was in turn repealed by PA 1955, No 269. See, currently, CLS 1956, §§ 340-.821–340.828 (Stat Ann 1959 Rev §§ 15.3821–15.3838).—REPORTER.

§ 411.7 (Stat Ann 1960 Rev § 17.147). Defendants rely upon *Boshaw* v. *J. J. Newberry Co.*, 259 Mich 333 (83 ALR 412), followed in *Blanton* v. *Clay Products Co.*, 310 Mich 635; and *Walker* v. *Ridley Cleaners, Inc.*, 311 Mich 4, which plaintiff urges we overrule.

In *Boshaw* v. *J. J. Newberry Co., supra,* in 1932, this Court said (p 341):

"The workmen's compensation act is an entire departure from the common law insofar as it pertains to the rights and duties of employer and employee. *Oleszek* v. *Ford Motor Co.*, 217 Mich 318. And what is more important, the rights and duties of the respective parties under the compensation act arise out of and are incident to the contract of employment. *Crane* v. *Leonard, Crossette & Riley,* 214 Mich 218 (18 ALR 285, 20 NCCA 621); *Wood* v. *Vroman,* 215 Mich 449. In other words, they are contractual in nature, and plaintiff is here asserting her right for double compensation because of her contract of employment with defendant. Hence, if the other essential elements of estoppel are present there is no reason why one of the parties to the contract should not be estopped from taking advantage of a fraud perpetrated on the other party incident to procuring the contractual relation."

One reason the doctrine of estoppel should not have been applied in *Boshaw* and in its progeny of *Blanton* and *Walker,* and why in my view it should not apply now, is that the provisions of the workmen's compensation law first above quoted from their inception expressly required the payment of double compensation in cases such as these in the absence of fraudulent use of statutory working permits or certificates of age. The legislature so decreed in clear, concise language lacking any suggestion that this Court was free to add further restrictions upon the statutory right of a minor,

injured while illegally employed, to receive double compensation.

The statutes quoted in the forepart of this opinion demonstrate to me a clear legislative purpose to assure by every reasonable means known that minors would not be employed in occupations injurious to health or morals or unduly hazardous. The provision in CLS 1956, § 411.7, for double compensation to illegally employed injured minors, in practical effect, was well calculated to deter such illegal employment except in those cases where fraudulent use was made of statutory working permits or certificates of age. The single statutory exception for the protection of employers should not have been judicially enlarged by *Boshaw's* decision to permit escape from such deterrent, on a contract theory of estoppel or otherwise, where the employer was not duped into hiring the minor claimant by the fraudulent use of such statutory permits or certificates.

I find no authority in any other State with comparable statutory provisions for what this Court did in *Boshaw, Blanton,* and *Walker.* In fact, the courts of other States with comparable statutes have ruled otherwise.

In *Sackolwitz* v. *Charles Hamburg & Co., Inc.,* 295 NY 264 (67 NE2d 152), the New York court of appeals had before it a claim for double workmen's compensation benefits by an injured minor who had used his older brother's identification and social security card as evidence of age in seeking employment. The New York court, specifically rejecting an estoppel theory, allowed double compensation for claimant's injuries by holding that (1) recovery of workmen's compensation was wholly statutory, not dependent upon the equities of any given case, (2) historically, misrepresentation of age did not bar a minor's common-law recovery against an employer

who hired him contrary to State labor laws (historically true in Michigan as well; see *Syneszewski* v. *Schmidt,* 153 Mich 438), and (3) one purpose of allowing double compensation to such injured minors is to recompense them in an amount closer to what they might have obtained in a common-law action.

The Wisconsin supreme court, in *Bloomer Brewery* v. *Industrial Commission,* 239 Wis 605 (2 NW2d 226, 142 ALR 1015), specifically rejected the estoppel theory of our *Boshaw* decision and ordered an award of treble compensation. The court said the right sought to be asserted did not depend upon the contractual relationship of employment such that estoppel could be asserted in bar, but depended instead upon legislative grant of right.

See, also, *McGuckin* v. *Keystone Dye & Metal Works,* 29 Pa D & C Rep 556; *Landrum* v. *Empire Carriers Corp.,* 2 App Div 2d 912 (156 NYS2d 448); *Braiter* v. *Addie Co., Inc.,* 256 App Div 882 (9 NYS2d 280), affirmed 282 NY 326 (26 NE 2d 277).

In Michigan, however, as Chief Justice CARR's quotation from *Boshaw's* opinion discloses, this Court simply could not believe the legislature really intended to place the risk of a minor's illegal employment upon the employer, and to impose upon the employer the burden of paying double compensation to such minor if injured, under any circumstance except the employer's own knowing participation in such illegal employment. The legislature said that any minor injured while illegally employed shall be paid double compensation, "in the absence of fraudulent use of permits or certificates of age." This is the language which the Court in *Boshaw* said "clearly indicates an intent on the part of the legislature to protect an employer from a double award of compensation, if, without his fault, he is deceived by the minor applicant as to his age." *Boshaw* v. *J. J. Newberry Co., supra,* at pp 336, 337.

I fail to read such clear intent in the statutory language. Had the legislature so intended, the minor's disqualifying fraud would not have been limited to his misuse of statutory working permits or certificates of age. But the fact remains the legislature, in clear and unequivocal language, did so limit the fraud which would disqualify an illegally employed injured minor from receiving double compensation. The legislature did not apply estoppel concepts of contract law to this purely statutory legal conflict between employer and his illegally employed injured minor; instead, it sought to invoke the employer's economic self-interest in the elimination of just such injurious or hazardous employment of minors as led to the amputation of Halfacre's left index finger and part of his left thumb. We may concede that an employer innocently may be deceived as to a minor applicant's age and thereby forego demand for the working permit or age certificate required by the statute. We may also concede, for the sake of argument, that requiring the employer to pay double compensation to such an injured minor is "at variance with basic principles of legal fairness" (Chief Justice CARR's opinion, pp 390, 396), if by that we mean "fairness" as it is generally applied at common law in resolution of disputes which require judicial imposition of fault. But in the context of the case before us, where the injured minor's right to common-law damages has been superseded by his right to workmen's compensation benefits measured by the legislature's grace, fault is not an issue except to the extent the legislature alone provides. What this means to me is that this Court erred in its opinion in *Boshaw* by reading into the statute what was not there to be read,—by importing concepts of fault and estoppel where they have no legitimate place except by legislative action. In *Boshaw,* we twisted legis-

lative language designed for the protection of minors
injured while illegally employed into language
"to protect an employer from a double award of
compensation" (*Boshaw,* p 337).

Having concluded that we erred in *Boshaw* and
in the cases which followed, this appeal now presents
for me the recurring and troublesome problem of
deciding what we should, or can, do about it. Shall
we candidly overrule *Boshaw* and *Blanton* and
*Walker,* having stated our conviction that they erred
in their construction of our workmen's compensa-
tion law, or shall we adhere to our acknowledged
error on strength of the policy of *stare decisis* and
its result—related doctrines of legislative acquies-
cence and exhaustion of judicial power? My choice
in this case is the first course,—a forthright over-
ruling of all 3 cases. This is not a situation in
which rights of property have been affected by a
prior decision found to be erroneous, nor is it one
in which reliance has been placed upon a prior deci-
sion such that overruling it will result in injustice
to anyone. Were we to overrule those cases, our
confession of error would mean only that we be-
latedly recognize that the legislature can grant, and
has granted, double compensation to minor em-
ployees injured while illegally employed conditioned
*only* upon the absence of fraudulent use of statutory
working permits or certificates of age. Were we
to do so, full effect would at long last be given the
legislature's commendable purpose in limiting in-
jurious or hazardous employment of minors. I do
not conceive the policy of *stare decisis* so inflexible
that it must necessarily bar what is here proposed.
In recent years members of this Court have had
frequent occasion to acknowledge the circumstances
in which they would feel bound by the policy of *stare
decisis* to adhere to precedent, even erroneous prece-
dent, and to declare the circumstances in which they

would feel free to re-examine the basis of prior decisions as I have attempted to do here. For views on this subject which reflect my own, see *Sheppard* v. *Michigan National Bank,* 348 Mich 577, 596–603; *Park* v. *Employment Security Commission,* 355 Mich 103, 138–140 and 141–151; and *Parker* v. *Port Huron Hospital,* 361 Mich 1, 10.

*Sheppard* and *Park* demonstrate our right and duty to re-examine and re-examine again, if need be, statutory enactments already judicially construed. We are not plagued in this State, any more than is the United States supreme court (*Erie Railroad Co.* v. *Tompkins,* 304 US 64 [58 S Ct 817, 82 L ed 1188, 114 ALR 1487]), by such stultifying notions of judicial infallibility or, if you wish, impotence, that once having spoken we can speak no more. But this is not precisely accurate, we are told. It is said that when the legislature accepts our interpretation of its language, we should be bound to it thereafter until the legislature enacts again. With this "doctrine of legislative acceptance" we can all agree, provided, however, we first understand what is meant by "legislative acceptance." Were we in Michigan blessed with adequate records of legislative proceedings from which we could discern accurately "legislative intent," and were such records available to demonstrate the legislature's actual awareness and acceptance of our interpretation of legislative language re-enacted without change, then indeed I would consider such re-enacted language carried with it our prior interpretation, originally right or originally wrong. In some circumstances, even in the absence of detailed legislative history, perhaps such legislative acceptance can be established satisfactorily.

However, the re-enactment of the language here pertinent in what is now CLS 1956, § 411.7 (Stat Ann 1960 Rev § 17.147) 8 times in 30 years since

*Boshaw,* is no more persuasive to me of the legislature's acceptance of *Boshaw's* interpretation than the re-enactment of the statutory language (CLS 1956, § 421.29 [Stat Ann 1960 Rev § 17.531]) involved in *Park* v. *Employment Security Commission, supra,* 7 times in the 18 years following its original judicial interpretation in *Chrysler Corp.* v. *Smith,* 297 Mich 438 (135 ALR 900), was persuasive to Mr. Justice BLACK and the other members of this Court's majority in *Park.* The fact is that, like the legislative amendments of section 421.29, the amendments of section 411.7 were specifically aimed at revision of, and additions to, other provisions in the lengthy section of which the language with which we are concerned is a part only. Section 411.7 consists of 2 separately numbered subparagraphs. We are concerned only with a proviso clause appearing in the second subparagraph. Six times since *Boshaw,* the legislature amended only the first subparagraph, but on each occasion, as a matter of constitutional mandate (article 5, § 21, Const 1908), the entire section (both subparagraphs) was set forth at length. PA 1937, No 204; PA 1939, No 107; PA 1942 (1st Ex Sess), No 6; PA 1943, No 245; PA 1952, No 77; PA 1955, No 122. On the 2 remaining occasions when section 411.7 was amended, the second subparagraph was altered, but the proviso clause thereof, with which we are concerned, remained unchanged. PA 1949, No 284 and PA 1953, No 53. From the fact that the proviso clause, unchanged, was republished as required by our Constitution in the acts amending other provisions of the section in which it appears, we are told we must find a legislative purpose to adopt our intervening interpretation of that proviso clause. For me, the evidence of "legislative acceptance" is not enough. See *Commissioner of Internal Revenue* v. *Glenshaw Glass Co.,* 348 US 426, 431 (75 S Ct 473, 99 L ed 483),

where Chief Justice Warren, speaking for the court,. expressed its views on this subject as follows:

"It is urged that re-enactment of section 22(a)* without change since the board of tax appeals held punitive damages nontaxable  *  *  *  indicates congressional satisfaction with that holding.  Re- enactment—particularly without the slightest af- firmative indication that congress ever had the [prior] decision before it—is an unreliable indicium at best."

The fact of republication, standing alone, tells us: nothing about the legislature's intention.  Was the legislature really aware of our prior interpretation?' If so, did it really agree with it as a true expression of its original or current intention?  If not, was it practically possible legislatively to correct our egregious error?  Were political pressures, perfectly honorable to be sure, too overwhelming to effect legislative correction?  Perhaps other factors were involved; there are too many to list them all.

The argument for legislative acceptance of our prior interpretation, bottomed as it is upon the fre- quent re-enactments of the section in which the in- terpreted language appears, is only 1 step removed from the same argument not infrequently made when no legislative action whatever has been taken.  I see very little more logic to its invocation in the one instance than in the other, and for reasons com- mon to both.  The former Mr. Justice TALBOT SMITH paid his respects to this weird doctrine of legislative action by inaction, in *Sheppard, supra,* 599–601, by quoting the following from Mr. Justice Rutledge's concurring opinion in *Cleveland* v. *United States,* 329 US 14, 22–24 (67 S Ct 13, 91 L ed 12):.

" 'Notwithstanding recent tendency, the idea can- not always be accepted that congress, by remaining

---

* Internal revenue act of 1939.—REPORTER.

silent and taking no affirmative action in repudiation, gives approval to judicial misconstruction of its enactments. See *Girouard* v. *United States,* 328 US 61, 69 (68 S Ct 826, 90 L ed 1084). It is perhaps too late now to deny that, legislatively speaking as in ordinary life, silence in some instances may give consent. But it would be going even farther beyond reason and common experience to maintain, as there are signs we may be by way of doing, that in legislation any more than in other affairs silence or nonaction always is acquiescence equivalent to action.

" 'There are vast differences between legislating by doing nothing and legislating by positive enactment, both in the processes by which the will of congress is derived and stated and in the clarity and certainty of the expression of its will. And there are many reasons, other than to indicate approval of what the courts have done, why congress may fail to take affirmative action to repudiate their misconstruction of its duly-adopted laws. Among them may be the sheer pressure of other and more important business. See *Moore* v. *Cleveland R. Co.* (CCA 6), 108 F2d 656, 660. At times political considerations may work to forbid taking corrective action. And in such cases, as well as others, there may be a strong and proper tendency to trust to the courts to correct their own errors, see *Girouard* v. *United States, supra,* at 69, as they ought to do when experience has confirmed or demonstrated the errors' existence.

" 'The danger of imputing to congress, as a result of its failure to take positive or affirmative action through normal legislative processes, ideas entertained by the court concerning congress' will, is illustrated most dramatically perhaps by the vacillating and contradictory courses pursued in the long line of decisions imputing to "the silence of congress" varied effects in commerce clause cases. That danger may be and often is equally present in others. More often than not, the only safe assumption to make from congress' inaction is simply that congress

does not intend to act at all. *Cf., United States* v. *American Trucking Assns.,* 310 US 534, 550 (60 S Ct 1059, 84 L ed 1345). At best the contrary view can be only an inference, altogether lacking in the normal evidences of legislative intent and often subject to varying views of that intent. In short, although recognizing that by silence congress at times may be taken to acquiesce and thus approve, we should be very sure that, under all the circumstances of a given situation, it has done so before we so rule and thus at once relieve ourselves from and shift to it the burden of correcting what we have done wrongly. The matter is particular, not general, notwithstanding earlier exceptional treatment and more recent tendency. Just as dubious legislative history is at times much overridden, so also is silence or inaction often mistaken for legislation.' "

I cannot agree that republication of an interpreted statutory provision, once, twice, or 7 or 8 times in 18 years or 30 years, without more evidence of legislative intent to accept our admittedly erroneous interpretation, can bar this Court from correcting its own error. Rather than to rely upon such uncertain ground with the result that judicial error is judicially perpetuated, I would overrule *Boshaw, Blanton,* and *Walker,* confident that the legislature is likewise empowered to speak again if we err.

I would affirm, with costs to appellee.

KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred with SOURIS, J.

BLACK, J. (*concurring*). This is another case, like recent *Burns* and *Harris,*[1] where one who claims under a long standing statute would have us rewrite that statute so that it provide for him exactly what this Court, 30 years ago and consistently since, has

[1] *Burns* v. *Van Laan,* 367 Mich 485. *Harris* v. *City of Detroit,* 367 Mich 526.

said unanimously it does not provide. So comes to public assay the solemnly recorded and wholly united word of this Court, given repeatedly upon oath to lawyers, legislators, and judges, that this statutory proviso of 1927 spells out 2 kinds rather than 1 kind of defense against payment of double compensation to illegally employed minors.

That the Court erred on the 3 interpretive occasions in question (*Boshaw* v. *J. J. Newberry Co.,* 259 Mich 333 [83 ALR 412], decided in 1932; *Blanton* v. *Clay Products Co.,* 310 Mich 635, decided in 1945; and *Walker* v. *Ridley Cleaners, Inc.,* 311 Mich 4, also decided in 1945), is something more than manifest. Justice SOURIS agrees, discreetly *diplomatique,* and Chief Justice CARR warily undertakes no denial. The error actually glares through print at the dumfounded reader. When in 1927 the legislature said double compensation should be paid "in the absence of fraudulent use of permits or certificates of age," its inevasible reference was to the fraudulent use of that body's previous and exclusive creations, the statutory working permit and the statutory certificate of age. The reference could not have been to anything else conceivable. If any Brother cannot see this, so much the worse for his eyesight.

Now for a fact and blunt comment. In *Boshaw, Blanton,* and *Walker,* and now in these corresponding cases of Halfacre and *Keller,*[2] there was no fraudulent use of a permit or certificate of age. No such document existed or was claimed in defense of any one of the 5 cases. In *Boshaw* the Court just hauled off and enacted an amendment of the statute providing that fraudulent misrepresentation of age, in addition to "fraudulent use of permits or certificates of age," be and become a pleadable and provable bar to what otherwise would be payable, that is,

[2] *Keller* v. *Fraser Stamping Company,* 368 Mich 397.—REPORTER.

double compensation. The legislature in judicial view had failed to provide fully convenient defenses for employers and insurers of employers. Why should the employment offices of Michigan be bothered with compulsive insistence on production of a birth certificate or working permit every time a youthful or apparently youthful applicant for work shows up at the employment wicket? And was it not deemedly necessary that each employer, even though guilty of having illegally employed at hazardous work a compensably injured minor, should receive protection from common-law fraud on the part of such minor; not just fraud consisting of deceptive "use" of a work permit or certificate of age? Thus was the proviso judicially rewritten so that it include the added words, "and also in the absence of fraudulent misrepresentation of age," and thus did the court legislate. Such judicial legislation was quite all right, of course, its beneficence having been aimed in the "right" direction.

All this is concededly inelegant. Bluntness is indicated, nonetheless. Once in awhile, judges being mere men and men fortunately being different, patience with words penned of delicate quill dipped in judicially scented ink wears out in favor of curt exposition. It is better, as I conceive, that our membership face today's problem with open confession that the Supreme Court of Michigan both erred and legislated when *Boshaw, Blanton,* and *Walker* were handed down, one after the other, commencing in 1932.

A final comment upon the *Boshaw Case.* The brief for the claimant minor was written by then Attorney Clifford O'Sullivan of Port Huron, now a distinguished member of the bench of the 6th circuit court of appeals of the United States. Of the question then before this Court Judge O'Sullivan said (brief pages 6, 7):

"We think it clearly to have been the intention of the legislature to require an employer to obtain a certificate of some official as to the minor's age, so that the employer would not be dependent upon the child's own statement."

No one then or since, including the writer of the *Boshaw* opinion, has assumed to deny the accuracy of these words. Ignoring them, the Court turned instead to the common law and, quite without authority excepting that of naked power, wrote into the statute what was not there, the defense that "Her fraud must be held to estop her from profiting thereby" (*Boshaw* at 340). Thus was the child protective policy of the statute frustrated, and thus were employers and insurers given an easy means of outright avoidance of statutory payment of double compensation in cases of illegal employment of minors.

The above confessed, comes the real question: Whether today's temporally seated Court should undertake to overrule what the legislature has expressly as well as impliedly accepted by no less than 8 successive re-enactments[3] of this selfsame—and *Boshaw*-interpreted—legislative stipulation for payment of single rather than double compensation.

My Brother Souris' proposal to overrule is too rashly impetuous for me. After all, the doctrine of legislative reliance upon and acceptance of judicial interpretation has its value and its place. Moreover, there is present today one only of those "cogent circumstances" which, in *Sheppard* v. *Michigan National Bank*, 348 Mich 577, 596–603, and *Park* v. *Employment Security Commission*, 355 Mich 103, 138–140, 141–151, led this Court to overrule previous interpretative decisions. In today's instance, unless we are to ignore a constantly employed axiom (that the

. 3 PA 1937, No. 204; PA 1939, No 107; PA 1942 (1st Ex Sess), No 6; PA 1943, No 245; PA 1949, No 284; PA 1952, No 77; PA 1953, No 53; and PA 1955, No 122.

legislature enacts with the Court's interpretational decisions in one hand as it writes and votes with the other),[4] we have here most of the more or less conclusive reasons why the doctrine of legislative acceptance should be applied.   When a legislature, confronted constantly with *unanimous* interpretations like *Boshaw* and its progeny, deliberately re-enacts without change such an interpreted statutory proviso, and does so 8 times running over a period of 30 years, it seems to me that any judge who fails to apply the mentioned doctrine wittingly or unwittingly violates the law (see Cardozo, Nature of the Judicial Process, p 129).   I at least want no part of a motion to overrule what indeed was bad law but now is anchored in a regularly readopted statutory provision.

My Brother says that *Sheppard* and *Park* (each being an instance where a previous interpretation or interpretations were overruled) provide views which reflect his own.[5]  I agree with his references, yet suggest that neither for reasons of fact makes for present overruling.

Taking *Sheppard* first:  Since I had a part in the preparation of the particular *Sheppard* opinion to which Justice SOURIS refers (especially the portion presently quoted), let it be noted that *Sheppard* involved again (see *Dyer* v. *Sears, Roebuck & Co.,* 350 Mich 92) the chronic disease of judicial Michigan; 2

[4] I concede that this fiction of a part-time legislature, reviewing with profound care judicial decisions relating to a welter of bills each member must vote upon as he hurries each May toward adjournment and the hustings at home, is difficult if not impossible of digestion for all but judges.  But digest we must lest rules of evidence and of statutory construction become whimsically dangerous playthings, to be picked up or cast aside at personal will.  That was unabashedly done, by the way, when *Wallace* v. *Tripp,* 358 Mich 668, was handed down.

[5] He refers in the same vein to *Parker* v. *Port Huron Hospital,* 361 Mich 1, a case which dealt with a rule of the common law rather than a question of statutory interpretation.  I lay *Parker* aside for that reason.

parallel lines of interpretive decisions, each in utter conflict with the other and each haughtily ignoring such other as the Court picked and chose its precedentially erratic course from term to term. Justice TALBOT SMITH, writing in *Sheppard*, showed why the doctrine of legislative acceptance *could not be applied* to *Sheppard*, and why it *can be applied* here (pp 601, 602):

"Let us attempt, however, to apply the approval-by-silence doctrine to the precise situation before us. That is to say, let us assume that the silence of the legislature may, despite its ambiguity, be taken as an 'intent to adopt such (*i.e.*, the antecedent judicial) construction.' Let us, in fact, assume that the legislature, by formal and appropriate action, has so informed us. Where are we now?

"The answer is that we are still in the wilderness of doubt and confusion. The fact of the matter is that prior judicial authority may be found in this jurisdiction on many inconsistent propositions in compensation law. Does the legislature intend to adopt the earlier cases decided by this Court or the later? Does it intend to adopt the cases saying yes or the cases saying no? * * *

"The opinions submitted this date do not tell us. It is unnecessary to more than remind the bench and bar that the asserted doctrine of legislative adoption of judicial interpretations by either silence or, in fact, re-enactment, whatever the merits of the doctrine, can never be applied where the decisions themselves are in turmoil and conflict. This is a proposition to which we shall not cite authority."

With respect to this case of Halfacre there are no previous decisions "in turmoil and conflict." Instead there are 3 *unanimous* decisions, upon continued strength of which the legislature presumably has legislated 8 times. Thus and today there is affirmatively more than legislative "silence." There is frequent legislative action taken in presumptive

reliance upon judicial advices long since given with never a dissenting judicial voice. I repeat; never a dissenting judicial voice until these cases of Halfacre and *Keller* came along.

As for the *Park Case* it need only be said, as was said at the time, that the single earlier decision (*Chrysler Corp.* v. *Smith,* 297 Mich 438 [135 ALR 900]) was the subject of "sharp and unerring dissent." It literally forewarned the legislature that when the question came up again it would be due for something more than cozy reaffirmation. The divisive *Chrysler Case* actually remained in chancery, to engage the sporting phrase, until it arrived for re-examination by a court which of necessity was concerned with the need for unitary national construction of like statutes enacted (by most of the States) as a "part of the legislative scheme for unemployment compensation induced by the provisions of the social security act of 1935" (see footnote 2, p 145, *Unemployment Compensation Commission of Alaska* v. *Aragon,* 329 US 143 [67 S Ct 245, 91 L ed 136]). Here we are confronted by 3—not just 1— *unanimous* decisions, all matured and fitted to each other, which under the rule of *Department of Conservation* v. *Connor*[6] bid us accept gracefully what the legislature has accepted.

If *Boshaw* alone stood before us, divisive or otherwise, we then might avail ourselves of the principle that "one decision construing an act does not approach the dignity of a well settled interpretation" (*United States* v. *Raynor,* 302 US 540, 552 [58 S Ct 353, 82 L ed 413]; quoted and followed in *White* v. *Winchester Country Club,* 315 US 32, 40 [62 S Ct 425, 86 L ed 619]). Such, however, is not today's case. *Boshaw, Blanton,* and *Walker,* standing unitedly, constitute "the dignity of a well-settled in-

---

[6] 321 Mich 648, presently quoted.

terpretation" even though all were patently wrong when written, and there we find the difference between the situation faced in *Park* and that which faces us now. One clearly erroneous interpretation of a statute, attested over unanswerable dissent, has little value as presumptive proof of legislative acceptance thereof. It carries its own flag of independability. Three *unanimous* decisions however, supporting each other solidly and seemingly accepted for many years by an acquiescent legislature, are quite beyond judicial repudiation when they involve statutes rather than the common law.

As for Justice SOURIS' quotation of *Commissioner of Internal Revenue* v. *Glenshaw Glass Co.*, 348 US 426, 431 (75 S Ct 473, 99 L ed 483), it seems to me that he has stopped reading too soon. Here are the next 2 sentences, immediately following that which our Brother has taken from the *Glenshaw Case* (pp 431, 432):

"Moreover, the commissioner promptly published his nonacquiescence in this portion of the *Highland Farms* holding[7] and has, before and since, consistently maintained the position that these receipts are taxable. It therefore cannot be said with certitude that congress intended to carve an exception out of section 22(a)'s pervasive coverage."

One might add that the *Highland Farms* holding, said to have been "accepted" by congress, was a mere decision by the board of tax appeals; not an interpretation by the United States supreme court. And it was just 1 "prior" decision; not 3 in line released by the solely authoritative court of last resort.

*To conclude:* We are bound by our own rules of statutory construction, doubtful though they may be in many instances of application. "Where the

---

[7] *Highland Farms Corporation* v. *Commissioner of Internal Revenue*, 42 US BTA 1314.—REPORTER.

language used has been subject to judicial interpretation, the legislature is presumed to have used particular words in the sense in which they have been interpreted." (*People* v. *Powell*, 280 Mich 699, 703 [111 ALR 721]; followed expressly in *Jeruzal* v. *Wayne County Drain Commissioner*, 350 Mich 527, 534.) "Laws are assumed to be enacted by the legislative body with some knowledge of and regard to existing laws upon the same subject and decisions by the court of last resort in reference to them." (*Lenawee County Gas & Electric Co.* v. *City of Adrian*, 209 Mich 52, 64 [10 ALR 1328].) And see *Department of Conservation* v. *Connor*, 321 Mich 648, 652:

"The statute here involved having been enacted after the above decisions, it must be held that by adopting the language of the former statute the legislature adopted this Court's previous construction thereof. *Lenawee County Gas & Electric Co.* v. *City of Adrian*, 209 Mich 52 (10 ALR 1328); *People, ex rel. Simmons*, v. *Township of Munising*, 213 Mich 629; *People* v. *Powell*, 280 Mich 699 (111 ALR 721)."

The reason is that we have no better—no alternately available—means of fitting that nebulous thing known as legislative intent to the variety of contentious circumstances which come regularly before the courts. Admittedly, the presumptions by which we pluck such intent from words and events are quite figmental. They are there nevertheless, and we are granted no warrant of disregard thereof when some settled interpretation we do not like comes before us.

SUPPLEMENT—December 3d:
The appeal board below, understandably mischievous, granted double compensation to Daniel Halfacre (young, single and without dependents) and denied double compensation to Peggy Keller (a

young mother of a 6-month-old child). Now, should we divide equally, the result would be double compensation for Halfacre and single for Keller.

Such a result, left to stand, would make jesting-stock of any court of last resort. Not liking such result, I cast my vote to affirm Halfacre and to reverse *Keller*. If Daniel Halfacre is to receive double compensation, then so should Peggy Keller say I. Doing so, I do not depart from the interpretational convictions expressed above. Such will be useful for future reference.

Carr, C. J. (*dissenting*). The record on this appeal from an award of compensation by the workmen's compensation appeal board presents an unusual situation. On or about March 15, 1960, plaintiff sought employment by defendant Paragon Bridge & Steel Company. He was given a form of application containing a number of questions, which he filled out and signed. He was nearly 18 years of age at the time, having been born on June 16, 1942. In his application he gave his age as 21, and the date of his birth as June 16, 1938. He listed his weight as 190 pounds and his height as 5′11–1/2″. He also stated in the application that he had been previously employed in 2 different factories. Under that portion of the application relating to his health he indicated that there had been no material change in his weight during the preceding 5 years. Included in the application was the following certification:

"I have carefully read all the questions and answers above and on both sides of this application, and hereby certify that the information as to my identity, past employment, health history, and all other matters referred to, is correct and true, and that if accepted for employment such acceptance is based on the information given here. I further agree to submit to such physical examination as is

required at any time. I also agree that the information contained in this application may be used by my employer for reporting under the provisions of the unemployment insurance and old age pension laws of this and any other State, and of the United States."

Based on his written application, and his certification as to the correctness of the answers therein, he was given employment and told that he could begin work on the following day. It is conceded that the representative of defendant company who took his application and employed him acted in good faith and without any reason to doubt the correctness of plaintiff's written statements as to his age and date of birth. There is no suggestion in the case that plaintiff's physical appearance indicated in any way that he was less than the age claimed by him. It is conceded that he was employed on the basis of representations that were false and fraudulent. In his testimony following his application for compensation he stated as his reasons for making the false answers that he wanted employment, and it is apparent that he realized that he could not obtain such from defendant Paragon Bridge & Steel Company if he gave his true age.

While working on March 25, 1960, plaintiff suffered an injury to his hand of a serious character. His application for compensation was dated April 18, 1960, and apparently received by the workmen's compensation department 2 days later. Hearing was had before a referee of said department on September 12, 1960, resulting in an award of double compensation to plaintiff, which award was affirmed by the workmen's compensation appeal board by a 2-to-1 vote. Defendants' application for leave to appeal was granted by this Court and the question now before us for determination is whether defendant employer, who admittedly acted in good faith and

was deceived by the intentionally false statements of plaintiff with reference to his age, can be compelled to pay double compensation because of the injury received by plaintiff.

The award of compensation, affirmed by the compensation appeal board, was based on the following provision contained in CLS 1956, § 411.7 (Stat Ann 1960 Rev § 17.147) which reads:

"Provided, That any minor under 18 years of age whose employment at the time of injury shall be shown to be illegal shall, in the absence of fraudulent use of permits or certificates of age, in which case only single compensation shall be paid, receive compensation double that provided elsewhere in this act."

Said provision was contained in its present form in PA 1929, No 113, which amended certain sections of the workmen's compensation act.* It has been considered by this Court in prior decisions, the leading case being *Boshaw* v. *J. J. Newberry Co.*, 259 Mich 333 (83 ALR 412). In that case, as in the case at bar, the plaintiff in making application for employment deliberately falsified her age. In her written application she stated that she was 18 years of age whereas she was as a matter of fact 3 years younger. An award of double compensation under the statute was appealed to this Court and was reversed by unanimous decision, it being held that plaintiff was entitled to single compensation only. The opinion in the case, written by Mr. Justice North, after quoting the provision of the statute above set forth, indicated the reasons for the decision as follows (pp 336–340):

"Because plaintiff misrepresented her age, defendant did not obtain the permit or certificate re-

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1960 Rev and Stat Ann 1961 Cum Supp § 17.141 *et seq.*]).

quired by the statute.  Had plaintiff been 18 years of age, as she represented, defendant would have been under no obligation to obtain such permit or certificate.  By plaintiff's deceit defendant was tricked into an apparent violation of the statute; and in consequence thereof plaintiff is now asking that she be awarded double compensation instead of single compensation.  The injustice of such a claim is so obvious that it should not be sustained unless necessitated by the statutory provisions.  While the instant case is not literally covered thereby, it is of interest to note that the statute expressly provides that an employee who makes 'fraudulent use of permits or certificates of age' shall not be awarded double compensation (section 8413).  We think this provision of the statute clearly indicates an intent on the part of the legislature to protect an employer from a double award of compensation, if, without his fault, he is deceived by the minor applicant as to his age.  In *Ganga* v. *Ford Motor Co.,* 250 Mich 247, 250, Justice BUTZEL said:

"'It further provides that minors under 18 years of age shall be entitled to double the amount of the compensation provided for, unless they have secured the employment fraudulently, in which event they shall receive only single compensation.'

"See Justice POTTER's opinion in *Thomas* v. *Morton Salt Co.,* 253 Mich 613, 624.  *   *   *

"It is fair to assume that, because of plaintiff's false statement in regard to her age, defendant understood there was no occasion for its securing the permit or certificate required by the statute when minors under 18 years of age are employed.  It is this circumstance alone and of which defendant had no knowledge that enables plaintiff to assert her claim for double compensation.  A more glaring attempt by a wrongdoer to profit by the wrong perpetrated is difficult to conceive; and courts cannot give such misconduct their stamp of approval.  In *Patterson* v. *Kasper,* 182 Mich 281, 283 (LRA1915A, 1221),

we quoted with approval from *Shaw* v. *Coffin,* 58 Me 254 (4 Am Rep 290), the following:

" 'It would be a reproach to the law, if a minor, when arrived to years of manhood, were to be allowed to escape from the payment of what is due, by the plea that he had stolen the money demanded of him when under age.'

"A minor is liable to one whose property he has obtained by false representation. *Patterson* v. *Kasper, supra.* If such is the law, it would be little short of judicial somnambulism to hold that plaintiff, in consequence of her alleged illegal employment, procured solely by her own fraud and deceit, could recover double compensation from the one upon whom she perpetrated the fraud. To be consistent, the court, in following the *Patterson Case,* would necessarily hold that money which the minor employee thus fraudulently obtained in turn could be recovered from the minor in an action by the employer.

"We have repeatedly held the rights of the respective parties under the workmen's compensation law are fundamentally based upon the contract of employment. The compensation act recognizes the ability of minors to enter into employment contracts. CL 1929, § 8413.* In the case at bar the only contract of employment was one in which defendant hired a minor past 18 years of age. Incident to such a contract, no double liability is provided in the statute. Plaintiff ought not to be awarded double compensation on the basis of a contract she did not make; especially since her own false representation as to her age resulted in defendant not complying with the statutory provisions which would have saved it from double liability in the event of a compensatory injury to plaintiff.

"The controlling factor here is that plaintiff's fraud and deceit was the sole cause from which arose the condition in consequence of which she now asserts a right to double compensation, and this condition was at all times unknown to her employer until

---

* Currently CLS 1956, § 411.7, *ante.*—Reporter.

after the accident occurred. The relationship of employer and employee was not affected by the fact that the employment was obtained by misrepresentation. *Ganga* v. *Ford Motor Co., supra.* This is true, because, notwithstanding the misrepresentation, the fact of employment was known to both parties. The status of employer and employee existed. It follows that the plaintiff in the instant case as an employee is entitled to single compensation. But the defendant employer did not know of a contingent double liability to plaintiff and except for the fraud she perpetrated it could not have been charged with such liability. Her fraud must be held to estop her from profiting thereby."

This decision was followed in *Blanton* v. *Clay Products Co.,* 310 Mich 635, and in *Walker* v. *Ridley Cleaners, Inc.,* 311 Mich 4. Mr. Justice SOURIS, in writing for affirmation of the order of the appeal board, would overrule these prior decisions of the Court. It is significant, however, as pointed out by Mr. Justice BLACK in his opinion, that the section containing the statutory provision above quoted has been amended by the legislature at 8 successive sessions thereof following the decision in *Boshaw,* but that the language of the provision quoted has been re-enacted without change as incorporated in the workmen's compensation law by the amendatory act of 1929. There have been 4 such re-enactments since the decision in *Walker* v. *Ridley Cleaners, Inc., supra.* It thus appears that the legislature, with knowledge of the interpretation placed on the provision in question by this Court, has repeatedly re-enacted it without change. The conclusion necessarily follows that each such re-enactment was made in the light of the interpretation which the legislature, by its action, accepted. The rule is generally recognized that the adoption by a legislative body of statutory language that has been judicially construed

by the court of last resort of the State involves the acceptance of such construction.

The language used by the Court in reversing, *Boshaw* v. *J. J. Newberry Co., supra,* is equally applicable to the facts in the case at bar. It clearly appears from plaintiff's testimony before the referee that he knew that he could not obtain the desired employment with defendant Paragon Bridge & Steel Company if he answered truthfully the questions in the written application that he filled out, certified to, and signed. It is not questioned that his application would have been rejected had he truthfully stated his age or date of birth. Said defendant had no reason to suspect that it was being induced to enter into a contractual relationship with one under the age of 18. Its representative, in dealing with plaintiff, had no reason to suspect, and obviously did not suspect, that plaintiff was falsifying in respect to his age. The fact that he had previously worked in other factories lent support to the conclusion that reliance might properly be placed on his application as he had prepared it.

We do not think that it was the intention of the legislature in the original enactment of the provision for double compensation to minors in certain cases to grant such right in cases where the making of the contract of employment has been induced by deliberate fraud and misrepresentation on the part of one seeking to obtain double compensation for an injury. As indicated in the opinion in the *Boshaw Case,* any such intent would be at variance with basic principles of legal fairness. The legislature by repeatedly re-enacting the language of the proviso quoted must be presumed to have recognized, by *affirmative* action, the interpretation and application of said provision in cases involving facts of the nature presented by the record in this case.

The case should be remanded to the workmen's compensation appeal board with directions to set aside the order for double compensation to plaintiff and to enter in lieu thereof an order for single compensation. A question of statutory interpretation being at issue, no costs should be allowed.

DETHMERS and KELLY, JJ., concurred with CARR, C. J.